**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, | |
| Plaintiff, | Case No. |
| v. | |
| 3225 CEDAR STREET, LLC (GA), SHARITA SAWYER, RICHARD STEELE, and, NETWORK PROPERTIES AND INVESTMENTS, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff WFG National Title Insurance Company ("Plaintiff"), files this Complaint against 3225 Cedar Street, LLC, Sharita Sawyer, Richard Steele, and Network Properties and Investments, LLC ("Defendants"), states as follows:

### I.   JURISDICTION AND VENUE

1.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity exists, and Plaintiff is claiming in excess of $75,000 in damages.

2.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because the events in question took place in this District.

## II.    PARTIES

3.      Plaintiff is a South Carolina Corporation with its principal place of business located in Oregon at 12909 SW 68th Parkway, Suite 350, Portland, Oregon 97223.

4.      3225 Cedar Street, LLC ("Georgia Cedar Street") is a Georgia Limited Liability Company with its principal place of business at 4565 Covington Highway, Apartment 4126 E, Decatur, Georgia 30032.

5.      Upon information and belief, all members of Georgia Cedar Street are domiciled in the State of Georgia.

6.      Sharita Sawyer is an individual domiciled in Georgia, who resides at 4910 Sandberg Ct., Stone Mountain, Georgia 30088.

7.      Richard Steele is an individual domiciled in Georgia, who resides at 4910 Sandberg Ct., Stone Mountain, Georgia 30088.

8.      Network Properties and Investments, LLC ("Network Properties"), is a Georgia Limited Liability Company with its principal place of business at 2783 Newtons Crest Circle, Snellville, Georgia 30078.

9.      Upon information and belief, all members of Network Properties are domiciled in the State of Georgia.

### III.   **FACTS**

10.     Plaintiff incorporates the foregoing pleadings as if stated herein.

11.     This matter concerns multiple acts of fraud by all four Defendants concerning property located at 690 McDonough Boulevard, SE, Atlanta, Georgia 30315 (the "McDonough Property") and 1033 McDaniel Street SW, Atlanta, Georgia 30310 (the "McDaniel Property").

### **The McDonough Property Fraud**

12.     Teddy Jacobs ("Teddy Jacobs") acquired the McDonough Property in 2006, via Warranty Deed. A true and correct copy of this Warranty Deed is attached hereto as **Exhibit A**.

13.     In 2010, the McDonough Property was sold at a tax sale and conveyed via Tax Deed to Greyfield Resources, Inc., and in 2012 Greyfield Resources, Inc., conveyed the McDonough Property, via Quit Claim Deed, to 3225 Cedar Street, LLC, a Nevada Limited Liability Company ("Nevada Cedar Street") (distinct from the Cedar Street references above, which is a Georgia Limited Liability Company). True and correct copies of the Tax Deed and the Quitclaim Deed are attached hereto as **Exhibit B**.

3

14.    The Defendants created the Georgia Cedar Street entity to perpetuate the fraud described herein.

15.    At all times relevant hereto, the Defendants knew that the Georgia Cedar Street entity was not related to the Nevada Cedar Street entity, nor was it authorized to act on behalf of the Nevada Cedar Street entity.

16.    Jacobs continued to hold an interest in the McDonough Property, subject to the Tax Deed interest held by Nevada Cedar Street, until he conveyed the McDonough Property, via Quitclaim Deed dated July 26, 2020, to I Buy Everything, LLC ("I Buy Everything"). A true and correct copy of this Quitclaim Deed is attached hereto as **Exhibit C**.

17.    On or about February 1, 2018, Jacobs' signature was forged on a Quitclaim Deed purporting to convey the McDonough Property to Network Properties & Investments, LLC ("Network Properties"), and was recorded in the Fulton County real estate records. A true and correct copy of this Quitclaim Deed is attached hereto as **Exhibit D**.

18.    At the request of Richard Steele, Sharita Sawyer forged Jacobs signature on the Quitclaim Deed. A true and correct copy of Richard Steele's deposition testimony is attached hereto as **Exhibit E**.

19.    The forged Quitclaim Deed did not actually effect the transfer of any interest in the McDonough Property as it falsely claimed to represent Jacobs authorization.

20.    With respect to the McDonough Property, Jacobs never spoke with any person affiliated with Network Properties about transferring his rights.

21.    After obtaining the forged Quitclaim Deed that Jacobs purportedly executed, Network Properties and its agents, Sharita Sawyer and Richard Steele, needed to deal with Nevada Cedar Street's interest in the McDonough Property in order to convey it.

22.    Knowing that the Georgia Cedar Street entity was not at all related to the Nevada Cedar Street entity, Sharita Sawyer then used Georgia Cedar Street to falsely execute a release of the Nevada Cedar Street's rights in 2018.

23.    Network Properties and its agents knew that the Georgia Cedar Street entity's release of the Nevada Cedar Street's interest in the McDonough Property would have no legal effect due to the misrepresentations of valid execution.

24.    Defendants intended to have other persons, including Plaintiff and its agents, rely, to their detriment, on this fraudulent misrepresentation.

25.    As a consequence, the erroneous transfer to Georgia Cedar Street clouded rightful title to the McDonough Property.

26.     On August 14, 2020, I Buy Everything filed a Quiet Title action in the Superior Court of Fulton County, Georgia, which was given civil action file number 2020cv339366.

27.     Relatedly, Nevada Cedar Street's interest in the McDonough Property was appropriated by Georgia Cedar Street.

28.     Sharita Sawyer and Anthony Johnson were listed on Georgia Cedar Street's Articles of Organization as the entity's organizers; Sawyer is also the entity's registered agent. A true and correct copy of Georgia Cedar Street's Articles of Organization are attached hereto as **Exhibit F**.

29.     Sharita Sawyer, on behalf of Georgia Cedar Street, despite holding no interest in the McDonough Property, ineffectively attempted to convey the McDonough Property to Big Bull Real Estate, LLC ("Big Bull'), via Quitclaim Deed dated June 7, 2018. A true and correct copy of this Quitclaim Deed is attached hereto as **Exhibit G**.

30.     Next, Network Properties ineffectively attempted to convey its interest to Big Bull, via Warranty Deed dated May 10, 2018. A true and correct copy of this Warranty Deed is attached hereto as **Exhibit H**.

31.     Notably, Richard Steele signed the 2018 Warranty Deed and is listed as Network Properties Managing Member. Ex. H.

32.     On or about October 5, 2020, Richard Steele, representing Network Properties attempted to execute a Quitclaim Deed to I Buy Everything through Adam Caskey, I Buy Everything's legal counsel. A true and correct copy of this offer and Quitclaim Deed is attached hereto as **Exhibit I**.

33.     Richard Steele attempted to release Network Properties from liability by again sending a fully executed Quitclaim Deed to Adam Caskey, counsel for I Buy Everything, on October 16, 2020. A true and accurate copy of this offer and Quitclaim Deed is attached hereto as **Exhibit J**.

34.     I Buy Everything, through its counsel Adam Caskey, rejected the October 16 offer from Richard Steele and Network Properties by letter dated October 28, 2020. A true and correct copy of the October 28, 2020 letter is attached hereto as **Exhibit K**.

35.     Big Bull then executed a Security Deed purporting to encumber the McDonough Property in exchange for a $182,000 loan from Boomerang Finance, LLC ("Boomerang"). A true and correct copy of this Security Deed is attached hereto as **Exhibit L**.

## **The McDaniel Property**

36.     Pursuant to a Quitclaim Deed dated March 29, 2012, Greyfield Resources, Inc. conveyed the McDaniel Property to Nevada Cedar Street. A true and correct copy of this Quitclaim Deed is attached hereto as **Exhibit M**.

37.     In April 2018, Anthony Johnson (and presumably Sharita Sawyer) created the Georgia Cedar Street entity, at the instruction and on the advice of Richard Steele, which the fraudsters used to perpetrate their conspiracy. Ex. E.

38.     Richard Steele previously testified that because the Nevada Cedar Street entity was defunct and inactive, he instructed Anthony Johnson to create the Georgia Cedar Street entity for purposes of consummating the fraudulent transaction. Ex. E.

39.     On June 7, 2018, Sharita Sawyer, on behalf of Georgia Cedar Street, which had no interest in the McDaniel Property, executed a Warranty Deed in an ineffective effort to falsely convey the McDaniel Property to AG Home Solutions, LLC, and BW Home Solutions, LLC. A true and correct copy of this Warranty Deed is attached hereto as **Exhibit N**.

40.     On July 20, 2018, AG Home Solutions, LLC, and BW Home Solutions, LLC, executed a Warranty Deed purporting to convey valid title to the McDaniel

Property to Mouna Abdelhamid for fair compensation. A true and correct copy of this Warranty Deed is attached hereto as **Exhibit O**.

41.    Given AG Home Solutions, LLC, and BW Home Solutions, LLC, failure to ever obtain title to the McDaniel Property, the conveyance to Mouna Abdelhamid was ostensibly ineffective.

42.    Plaintiff subsequently issued Mouna Abdelhamid a title insurance policy, which would not have issued but for the fraudulent activity conducted by Defendants through Georgia Cedar Street.

### The Lawsuit

43.    On August 14, 2020, I Buy Everything filed suit in the Superior Court of Fulton County against Network Properties, Big Bull, Boomerang, Nevada Cedar Street, and Georgia Cedar Street. A true and correct copy of the Petition to Quiet Title and Declaratory Judgment is attached hereto as **Exhibit P**.

44.    The Court subsequently ordered the addition of Vagabon Group Holdings, LLC, AG Home Solutions, LLC, BW Home Solutions, LLC, and Mouna Abdelhamid (the owner/manager of I Buy Everything). A true and correct copy of the Order Adding Parties dated January 25, 2021, is attached hereto as **Exhibit Q**.

45.    On April 22, 2021, AG Home Solutions, LLC, and BW Home Solutions, LLC, filed its Answer, Affirmative Defenses, and Cross-Claim. A true and correct copy is attached hereto as **Exhibit R**.

46.    On September 16, 2021, Mouna Abdelhamid filed her Amended Answer and Affirmative Defenses to Cross-Claim of 3225 Cedar St, LLC, and Cross-Claim against AG Home Solutions, LLC, and BW Home Solutions, LLC. A true and correct copy is attached hereto as **Exhibit S**.

47.    On March 18, 2022, the Court decreed that Abdelhamid is the owner of the McDaniel Property in fee simple, free and clear of any claim or right of Nevada Cedar Street. A true and correct copy is attached hereto as **Exhibit T**.

48.    On April 5, 2022, the Court further decreed that I Buy Everything is the owner of the McDonough Property free and clear of any and all rights of Network Properties and Investments, LLC, Big Bull Real Estate, LLC, and Boomerang Finance, LLC. A true and correct copy is attached hereto as **Exhibit U**.

49.    Relying on the efficacy of Big Bull's vesting deed, Plaintiff WFG issued Boomerang a Lender's Policy of Title Insurance dated July 12, 2018. A true and correct copy of the Lender's Policy of Title Insurance is attached hereto as **Exhibit V**.

50.     Relying on the efficacy of Mouna Abdelhamid's vesting deed, Plaintiff WFG issued Mouna Abdelhamid an Owner's Policy of Title Insurance dated June 22, 2018. A true and correct copy of the Owner's Policy of Title Insurance is attached hereto as **Exhibit W**.

51.     Plaintiff's issuance of the foregoing title policies, which were issued in reliance upon Defendants' fraudulent conduct, caused Plaintiff to incur over $38,442 in attorneys' fees and costs.

52.     Additionally, Plaintiff was forced to pay out over $66,000.00 to resolve this dispute.

## COUNT I: CIVIL CONSPIRACY

53.     Plaintiff incorporates the foregoing pleadings as if stated herein.

54.     Defendants, including the LLC entities acting through their managers, were involved in a fraudulent scheme involving the sale of real estate that they never owned, among other wrongs and misdeeds.

55.     The Defendants either positively or tacitly, arrived at a mutual understanding as to how they would defraud certain entitled, including but not limited to Plaintiff.

11

56.    Here, Defendants conspired to defraud WFG, Abdelhamid, and Boomerang and enrich themselves at the expense of WFG, Abdelhamid, and Boomerang, among others.

57.    Defendants' conspiracy caused the loss of Boomerang's security for its loan, resulting in significant harm, and caused WFG and Abdelhamid to incur significant expense and harm in establishing her title to the McDonough Property.

## COUNT II: FRAUD (McDonough Property)

58.    Plaintiff incorporates the foregoing pleadings as if stated herein.

59.    Defendants forged deeds and sold and (ineffectively) conveyed property that they never owned or had any interest in.

60.    Defendants' conduct in falsifying title history for the properties at issue constitutes false misrepresentations of material fact.

61.    Defendants undoubtedly acted with the intent to defraud WFG and Boomerang, among others.

62.    Defendants' conduct in falsifying title history for the properties at issue was done with the intention of inducing others to rely upon such fraudulent representations, including WFG and Boomerang.

63.    WFG entered into a title insurance policy with Boomerang, in reliance on the fraudulent chain of title, which Defendants manufactured.

64.    WFG and Boomerang acted in justifiable reliance on the false title histories Defendants manufactured.

65.    Defendants' conduct has caused WFG and Boomerang significant harm.

## COUNT III: FRAUD (McDaniel Property)

66.    Plaintiff incorporates the foregoing pleadings as if stated herein.

67.    Defendants forged deeds and sold and (ineffectively) conveyed property that they never owned or had any interest in.

68.    Defendants' conduct in falsifying title history for the properties at issue constitutes false misrepresentations of material fact.

69.    Defendants undoubtedly acted with the intent to defraud WFG and Abdelhamid, among others.

70.    Defendants' conduct in falsifying title history for the properties at issue was done with the intention of inducing others to rely upon such fraudulent representations, including WFG and Abdelhamid, among others.

71.    WFG entered into a title insurance policy with both Abdelhamid, in reliance on the fraudulent chain of title, which Defendants manufactured.

72.    WFG and Abdelhamid acted in justifiable reliance on the false title histories Defendants manufactured.

73.     Defendants' conduct has caused WFG and Abdelhamid significant harm.

### **COUNT IV: UNJUST ENRICHMENT (McDonough Property)**

74.     Plaintiff incorporates the foregoing pleadings as if stated herein.

75.     Defendants' have been unjustly enriched.

76.     Plaintiff WFG has had to bear the expense of rectifying the harm Defendants' fraudulent title history has caused.

77.     It would be unjust for Defendants to retain the benefits of their fraud.

### **COUNT V: UNJUST ENRICHMENT (McDaniel Property)**

78.     Plaintiff incorporates the foregoing pleadings as if stated herein.

79.     Defendants' have been unjustly enriched.

80.     Plaintiff WFG has had to bear the expense of rectifying the harm Defendants' fraudulent title history has caused.

81.     It would be unjust for Defendants to retain the benefits of their fraud.

WHEREFORE, Plaintiff WFG National Title Insurance Company respectfully requests judgment from the Court awarding it damages for the harm suffered, in excess of $75,000, including and not limited to $95,000 for the McDonough property and $66,000 for the McDaniel Property, as well as attorneys' fees and costs, and for whatever further relief the Court deems necessary and just.

Respectfully submitted this 26th day of October, 2022.

/s/ Kelsey Grodzicki

KELSEY GRODZICKI
Georgia Bar No. 134259

WINTER CAPRIOLA ZENNER, LLC
One Ameris Center
3490 Piedmont Road NE, Suite 800
Atlanta, GA 30305
Tel: (404) 844 - 5673
kgrodzicki@wczlaw.com
*Attorney for Plaintiff*

# EXHIBIT A

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=47211...



Deed Book 42956 Pg  519
Filed and Recorded Jul-10-2006 01:02pm
2006-0228693
Real Estate Transfer Tax $0.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

WARRANTY DEED

STATES OF GEORGIA
COUNTY OF DEKALB

THIS INDENTURE, made this 20TH day of JUNE in the year TWO THOUSAND SIX (2006), between ALICIA BURNETT, as party of the first part, hereinafter called GRANTOR, and TEDDY JACOBS, as "GRANTEE" ( the words "GRANTOR" AND "GRANTEE" to include their respective heirs, successors and assigns where the context requires permits)

WITNESSETH that: GRANTOR, for and in consideration of the sum of TEN DOLLARS AND NO/100 (10.00) in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledge, has granted, bargained, sold, aligned, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said GRANTEE,

SEE EXIBIT "A" ATTACHED HERETO

TO HAVE AND TO HOLD the said tract or parcel of land with all singular rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said GRANTEE forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend the right and title to the above described property unto the said GRANTEE against the claims of all persons, whomsoever.

IN WITNESS WHEROF, the GRANTOR has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered
In the presence of

_____
Witness

_____
ALICIA BURNETT

Notary Public

1 of 2                                                      8/19/2019, 12:44 PM

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=47211...

POOR ORIGINAL

Nm:RJ(049242), Rq:380.2                                    Deed Book 42956 Pg   520
                              EXHIBIT "A"                    Juanita Hicks
                                                            Clerk of Superior Court
                                                            Fulton County, Georgia

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25 OF
THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING PAR OF LOTS 32
AND 33 OF THE SUBDIVISION OF THE PROPERTY BELONGING TO GEORGE M.
BROWN AND JOSEPH M. BROWN AS PER PLAT BY C. E. ROBERTS, C. E.
RECORDED IN PLAT BOOK 1, PAGE 97, FULTON COUNTY RECORDS, MORE
PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEAST SIDE OF McDONOUGH ROAD 213
FEET, MORE OR LESS, SOUTHEASTERLY FROM THE NORTHEAST CORNER OF
McDONOUGH ROAD AND FUNSTON STREET (FORMERLY FEDERAL STREET)
WHICH POINT IS ON THE LINE BETWEEN  LOTS 32 AND 33 AS SHOWN ON SAID
PLAT; THENCE IN A SOUTHERLY DIRECTION ALONG THE NORTHEAST SIDE OF
McDONOUGH ROAD 54 FEET TO THE SOUTHWEST CORNER OF LOT 32, SAID
PLAT; THENCE IN A NORTHEASTERLY DIRECTION 197 FEET TO THE
NORTHWEST CORNER OF LOT 32 AND A 10 FOOT ALLEY; THENCE IN A
NORTHWESTERLY DIRECTION ALONG THE SOUTHWESTERN SIDE OF SAID
ALLEY 52 FEET TO THE NORTHWEST CORNER OF SAID LOT 33; THENCE IN A
SOUTHWESTERLY DIRECTION 190 FEET, MORE OR LESS, TO THE NORTHEAST
SIDE OF McDONOUGH ROAD AND THE POINT OF BEGINNING, BEING
PROPERTY KNOWN AS 690 McDONOUGH ROAD, S.E., EXCEPTING HOWEVER,
FROM THE ABOVE DESCRIBED PROPERTY, THAT PORTION OF SAME WHICH
WAS USED IN WIDENING McDONOUGH ROAD.

BEING THE SAME PROPERTY DESCRIBED IN DEED DATED NOVEMBER 29, 1985,
RECORDED IN DEED BOOK 9927, PAGE 269, FULTON COUNTY, GEORGIA
RECORDS.



# EXHIBIT B

When recorded, please return to:

NOTE TO CLERK: CROSS REFERENCE ARE
AS SHOWN ON SCHEDULE "A"

G.E.D.   BOOK 1188, PAGE 354
G.E.D.   BOOK 1188, PAGE 83
G.E.D.   BOOK 1188, PAGE 355
G.E.D.   BOOK 1188, PAGE 84
G.E.D.   BOOK 1188, PAGE 356

TPID:   14-0025-0001-037-3

STATE OF GEORGIA
COUNTY OF FULTON

TAX DEED

This indenture (the "Deed") made this 4th day of May, 2010, by and between TEDDY JACOBS, ("Owner") by and through Theodore Jackson, not individually, but in his official capacity as the Sheriff of Fulton County, (hereinafter "Grantor") and GREYFIELD RESOURCES, INC. (hereinafter Grantee").

WHEREAS, in the obedience to certain writ(s) of Fieri Facias, issued from the Tax Commissioner of Fulton County, which writ are/is more particularly described in Schedule "A" below, on the date which is shown in Schedule "A" below as the "Sale Date", during the legal hours of sale, Grantor did expose for sale at public outcry to the highest bidder for cash before the courthouse door in Fulton County, Georgia, the Property (as hereinafter defined), at which sale Grantee was the highest and best bidder for the sum shown in Schedule "A" as the "Sale Price" (hereinafter the "Sale Price"), and the Property was then and there knocked off to Grantee for said sum. Said sale was made after advertising the time, place, and terms thereof in the Fulton County Daily Report, published in Atlanta, Georgia, in the aforesaid county, and being the publication in which Sheriff's advertisements for said county are now published, once a week for four weeks prior to said sale, and said advertisement in all respects complied with the requirements of Code Section 9-13-140 of the Official Code of Georgia Annotated. Notice of the time, place, and terms of the sale of the Property was given pursuant to Code Section 48-4-1 of the Official Code of Georgia Annotated. Said sale was made for the purpose of paying ad valorem taxes owed, the interest and penalties on said taxes, and the expenses of the sale, all of which were mature and payable because of failure to pay same interest and penalties on said taxes, and the expenses of the sale, all of which were mature and payable because of failure to pay same when due.

NOW THEREFORE, in consideration of the sum of the sale price as stated in Schedule "A", receipt of which is hereby acknowledged, Grantor does hereby bargain, sell, and convey unto Grantee, its successors and assigns, so far as the office of Grantor authorizes her, the following described property (herein referred to as the "Property"); to wit:

All that tract or parcel of land lying and being in Fulton County, Georgia and being more particularly described on Schedule "A" below and by this reference made a part hereof.

TO HAVE AND TO HOLD the Property unto Grantee, its successors and assigns in fee simple.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed as of the day and year first above written.

GRANTOR:

Signed, sealed, and delivered
in the presence of

_____
Unofficial Witness

_____
Notary Public
Commission Date
NOTARY SEAL)

Notary Public, DeKalb County, Georgia
My Commission Expires Oct 9, 2011

TEDDY JACOBS
(Owner)
By and through

_____
Theodore Jackson
Sheriff of Fulton County

(SEAL)

## SCHEDULE "A"

FI FA.:  Recorded at BOOK 1138, PAGE 192, General Execution Docket, Fulton County, and transferred to VESTA HOLDINGS as NOMINEE for HEARTWOOD 16, INC., at BOOK 1188, PAGE 354, General Execution Docket, Fulton County.

FI FA.:  Recorded at BOOK 972, PAGE 191, General Execution Docket, Fulton County, and transferred to VESTA HOLDINGS as NOMINEE for HEARTWOOD 16, INC., at BOOK 1188, PAGE 83, General Execution Docket, Fulton County.

FI FA.:  Recorded at BOOK 1138, PAGE 191, General Execution Docket, Fulton County, and transferred to VESTA HOLDINGS as NOMINEE for HEARTWOOD 16, INC., at BOOK 1188, PAGE 355, General Execution Docket, Fulton County.

FI FA.:  Recorded at BOOK 972, PAGE 192, General Execution Docket, Fulton County, and transferred to VESTA HOLDINGS as NOMINEE for HEARTWOOD 16, INC., at BOOK 1188, PAGE 84, General Execution Docket, Fulton County.

FI FA.:  Recorded at BOOK 1138, PAGE 190, General Execution Docket, Fulton County, and transferred to VESTA HOLDINGS as NOMINEE for HEARTWOOD 16, INC., at BOOK 1188, PAGE 356, General Execution Docket, Fulton County.

SALES PRICE:  $10,000.00
SALE DATE:  5/4/2010
TAX YEARS:  2006; 2007, 2008
SHERIFF'S SALE NO:  0510-25106

Deed Book 49091 Pg  644
iled and Recorded Jun-10-2010 10:10am
2010-0241897
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

PAGE 1 OF 2

Description of Property
That tract or parcel of land conveyed by deed to TEDDY JACOBS Recorded at BOOK 42956, PAGE 519 per Records of Fulton County, Georgia.  Property known as 690 MC DONOUGH BLVD SE and Tax Parcel ID: 14-0025-0001-037-3 per records of the Fulton County Tax Commissioner and plat maps of the Fulton County Tax Assessors office.
        TOGETHER WITH all right, title, and interest running with the above-described property; AND TOGETHER with all rights, members, privileges and easements appurtenant thereto.

[NOTE TO CLERK: PLEASE CROSS-REFERENCE TO THIS DEED].

Deed Book 49091 Pg 645
Catherine Robinson
Clerk of Superior Court
Fulton County, Georgia

PAGE 2 OF 2

Deed Book 51165 Pg    21
Filed and Recorded May-03-2012 08:30am
2012-0119314
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

STATE OF GEORGIA
COUNTY OF CARROLL

## QUIT CLAIM DEED

THIS INDENTURE made this 29th day of March, 2012, by and between
GREYFIELD RESOURCES, INC.
party or parties of the first part, hereinafter referred to as "Grantor", and
3225 CEDAR ST LLC
party or parties of the second part hereinafter referred to as "Grantee", the words "Grantor" and
"Grantee" to include the neuter, masculine and feminine genders, the singular and the plural;

## WITNESSETH:

FOR AND IN CONSIDERATION of the sum of One Dollar and other good and valuable
consideration delivered to Grantor by Grantee at and before the execution, sealing and delivery
hereof, the receipt and sufficiency of which is hereby acknowledged, the Grantor has and hereby
does remise, release, convey and forever quit claim unto Grantee and the heirs, legal
representatives, successors and assigns of Grantee the following described property:

That tract or parcel of land conveyed by deed to TEDDY JACOBS Recorded at BOOK 42936, PAGE 519 per Records of Fulton
County, Georgia. Property known as 690 MC DONOUGH BLVD SE and Tax Parcel ID: 14-C025-0001-037-3 per records of the
Fulton County Tax Commissioner and plat maps of the Fulton County Tax Assessors office. Dist: 14  Land Lot: 25

TO HAVE AND TO HOLD said tract or parcel of land in order that neither the Grantor
nor any person claiming under Grantor shall at any time, by any means or ways, have, claim or
demand any right or title to said land or any of the rights, members and appurtenances thereof.
IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year
first above written.

Signed, Sealed and Delivered in the presence of:

_____
(Unofficial Witness)

GREYFIELD RESOURCES, INC.

_____ (Seal)
Philip Kauffman, President

_____
(Notary Public)

# EXHIBIT C

Deed Book 62083 Page 45
Filed and Recorded 08/12/2020 5:07:00 PM
2020-0258874
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 5443909151
7067927936

TPID: 14 -0025-0001-037-3

## QUITCLAIM DEED

THIS INDENTURE is made this 26th day of July, 2020 by and between TEDDY JACOBS (hereinafter referred to as "Grantor") and I BUY EVERYTHING, LLC (hereinafter referred to as "Grantee").

### WITNESSETH

FOR AND IN CONSIDERATION of the sum of Ten Dollars 00/100 cents ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor hereby remises, releases, and forever quit claims to Grantee, and Grantee's successors and assigns, all the right, title, interest, claim or demand which Grantor has or may have had in and to all that tract of parcel of land more fully described at Exhibit "A" attached hereto and incorporated herein by reference (hereinafter the "Premises").

TO HAVE AND TO HOLD the said described Premises, unto Grantee, and Grantee's successors and assigns, so that neither Grantor nor any other person or persons claiming under Grantor, shall at any time claim or demand any right, title, or interest to the aforesaid described Premises or its appurtenances.

IN WITNESS, Grantor has executed this document, on the day and year first above written.

As to Grantor, signed,
sealed and delivered
in the presence of:

GRANTOR:

Unofficial Witness:

Notary Public

TEDDY JACOBS

Deed Book 62083 Page 46
Cathelene Robinson
Clerk of Superior Court

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING PART OF LOTS 32 AND 33 OF THE SUBDIVISION OF THE PROPERTY BELONGING TO GEORGE M. BROWN AND JOSEPH M. BROWN AS PER PLAT BY C.E. ROBERTS RECORDED IN PLAT BOOK 1, PAGE 97, FULTON COUNTY RECORDS, MORE PARITCULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEAST SIDE OF MCDONOUGH ROAD (A/K/A MCDONOUGH BLVD) 213 FEET, MORE OR LESS, SOUTHEASTERLY FROM THE NORTHEAST CORNER OF MCDONOUGH ROAD A/K/A BLVD AND FUNSTON AVENUE WHICH POINT IS ON THE LINE BETWEEN LOTS 32 AND 33 AS SHOWN ON SAID PLAT; THENCE IN A SOUTHERLY DIRECTION ALONG THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD 54 FEET TO THE SOUTHWEST CORNER OF LOT 32, SAID PLAT; THENCE IN A NORTHEASTERLY DIRECTION 197 FEET TO THE NORTHWEST CORNER OF LOT 32 AND A 10 FOOT ALLEY; THENCE IN A NORTHWESTERLY DIRECTION ALONG THE SOUTHWESTERN SIDE OF SAID ALLEY 52 FEET TO THE NORTHWEST CORNER OF SAID LOT 33; THENCE IN A SOUTHWESTERLY DIRECTION 190 FEET, MORE OR LESS, TO THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD AND THE POINT OF BEGINNING. SAID PROPERTY IS KNOWN AS 690 MCDONOUGH ROAD, SE. A/K/A   690 MCDONOUGH BLVD, SE.

# EXHIBIT D

Deed Book 62083 Page 50
Cathelene Robinson
Clerk of Superior Court

Prepared by: *Network Properties & Investments LLC*
Grantee's Name *Network Properties & Investments LLC*
Grantee's Address *21783 Newtons Crest Circle*
*Snellville GA 30078*

STATE OF GEORGIA
COUNTY OF FULTON

QUIT CLAIM DEED

This indenture is made this *1ST* day of *Feby* 2018, by and between GRANTOR (Teddy Jacobs "Grantor") and GRANTEE (Network Properties & Investments LLC.").

KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor does quitclaim unto Grantee all of his/her right, title and interest in and to the following described real property:

All that track or parcel of land lying and being in Land Lot 25, of the 14 District., Fulton County Georgia being part of Lots 32 and 33 of the subdivision of the property belonging to George M. Brown and Joseph M. Brown and as per plat by C. E. Roberts. Recorded in Plat Book 1, page 97, Fulton County Records, More Particularly Described as Follows:

Beginning at a point on the northeast side of McDonough road 213 feet, more or less, southeasterly from the northeast corner of McDonough road and Funston street (Formerly federal street) Which point is on the line between lots 32 and 33 as shown on said plat: Thence in a southerly direction along the northeast side of McDonough Road 54 feet to the southwest corner of lot 32, said plat: Thence inn a northeasterly direction 197 feet to the northwest corner of lot 32 and a 10 foot alley; Thence in a northwesterly direction along the southwestern side of said alley 52 feet to the northwest corner of said lot 33;  Thence in a southwesterly direction 190 feet, more or less, to the northeast side of McDonough Road and the point of beginning, being side of McDonough Road and the point of the Beginning, Being Property known as 690 McDonough Road, S.E., Excepting however, from the above described property, that portion of same which was used in widening McDonough Road.

Being the same property described in deed dated November 29, 1985, Recorded in Deed Book 9927, Page 269, Fulton County, Georgia Records.

IN WITNESS WHEREOF, Grantor has affixed his/her hand and seal on the date first written.

Grantor Teddy Jacobs

Unofficial Witness

Unofficial Witness

Sworn to and subscribed before me,
this *1ST* day of *February*, 20*18*

Notary Public   COMMISSION EXPIRES   07/31/2018

Deed Book 58611 Pg 609
Filed and Recorded Apr-06-2018 12:16pm
2018-0080570
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

# EXHIBIT E

Page 40

1  would schedule the closing, make sure she had an attorney in

2  closing.  So she -- she handled all that.

3      Q    Ms. Russell?

4      A    Yes.

5      Q    It shows that you -- do you know who DHO, Inc. is?

6      A    No.  Are they -- no.

7      Q    Do you know why Drew, Eckl & Farnum was paid $5000?

8      A    What line is that?

9      Q    507.

10     A    I would assume -- okay.  Now that I'm looking at it,

11  DHO, Inc. was the second tax deed owner and that was their

12  payoff.  They were the -- they were the initial reason why we

13  were called because they were on the tax deed list, the tax

14  sale, the excess funds list.  So they -- they were the -- that

15  was the redemption cost and DHO, more than likely -- well,

16  that -- what was the other one?  Drew, Eckl & French --

17     Q    And Farnum.

18     A    -- and Farnum, more than likely they -- they were

19  additional unpaid taxes that were FIFAs that were sold to

20  whoever, private individuals, and that may have been their

21  attorneys' payoff to pay the additional unpaid taxes.

22     Q    Okay.  Thank you.  So when -- so when -- you were

23  talking with Mr. Johnson about Cedar Street, right?

24     A    Uh-huh (affirmative).

25     Q    He was working with the Nevada entity, right?

Page 41

1    A    His Nevada entity at the time was dissolved, defunct.

2    Q    Okay.  And then a Georgia entity was created, right?

3    A    Yes.

4    Q    And it was created for what purpose?

5    A    To be -- because when you are closing or you're

6    trying to close, the closing attorney is always going to

7    require for the corporation to be in good standing.  And the

8    reason why -- I believe the reason why he -- if I recall, the

9    reason why, either he couldn't reinstate the Nevada property,

10   and I don't know if he knew what he was doing because I don't

11   think he initially -- when he set it up, I don't think he paid

12   somebody like a lot of do -- a lot of people do to set up their

13   corporations.

14   Q    Like a LegalZoom sort of thing?

15   A    Yeah, or I think either that or maybe the cost was

16   just a lot of money to do it.  It was either -- I'm saying this

17   because I've had the situation before.  I don't know if I can

18   pertain it exactly to this one but it's -- this is, you know,

19   we do a lot of business with companies and for whatever reason,

20   they're already -- they're not good standing.

21   Q    So then, if I remember correctly, you testified that

22   you said or recommended that he just set it up here in Georgia.

23   Is that right?

24   A    Just set it up anywhere.  But I said if it's in

25   Georgia, it would be best.

Page 42

```
1      Q      Why did you think it would be best in Georgia?

2      A      Because the properties are here.

3      Q      What did Mr. Johnson say about that?

4      A      He just said okay.

5      Q      And so then they set up the Georgia LLC?

6      A      Uh-huh (affirmative).  Yes.

7      (Respondent's Exhibit No. 6 was introduced and marked for

8   identification.)

9      Q      I'm handing you what's been marked as -- as Exhibit

10  6.  Do you recognize this document?

11     A      Yes.

12     Q      What is it?

13     A      I received the -- I guess the court action or

14  whatever back in October and so I spoke to an attorney and said

15  hey, just type a letter up.  Basically, I wanted to state

16  what's on there; why it was a shock to me, I didn't know

17  anything about it until this action was brought forth.

18  Basically just stating the situation.  And I sent this to Mr.

19  Caskey certified mail saying that hey, if there's anything I

20  can do, if I can issue a quitclaim deed, I would be willing to

21  do that, you know.  Explained the situation on -- with Teddy

22  Jacobs, how I -- how we -- how that transaction was handled.

23     Q      What attorney helped you write this letter?

24     A      I typed it myself.

25     Q      You said -- didn't you testify that an attorney --
```

# EXHIBIT F

**ARTICLES OF ORGANIZATION**

*Electronically Filed*
Secretary of State
Filing Date: 4/12/2018 5:17:16 PM

## BUSINESS INFORMATION

| | |
|---|---|
| **CONTROL NUMBER** | 18051758 |
| **BUSINESS NAME** | 3225 CEDAR ST LLC |
| **BUSINESS TYPE** | Domestic Limited Liability Company |
| **EFFECTIVE DATE** | 04/12/2018 |

## PRINCIPAL OFFICE ADDRESS

**ADDRESS**  PO BOX 311, STONE MOUNTAIN, GA, 30086, USA

## REGISTERED AGENT'S NAME AND ADDRESS

| NAME | ADDRESS |
|---|---|
| SHARITA SAWYER | 6031 BLACKHAWK TRAIL, Cobb, MABLETON, GA, 30126, USA |

## ORGANIZER(S)

| NAME | TITLE | ADDRESS |
|---|---|---|
| ANTHONY JOHNSON | ORGANIZER | 11304 SOLSTICE LOOP, SANFORD, FL, 32771, USA |
| SHARITA SAWYER | ORGANIZER | 6031 BLACKHAWK TRAIL, MABLETON, GA, 30126, USA |

## OPTIONAL PROVISIONS

N/A

## AUTHORIZER INFORMATION

| | |
|---|---|
| **AUTHORIZER SIGNATURE** | SHARITA SAWYER |
| **AUTHORIZER TITLE** | Organizer |

# EXHIBIT G

Deed Book: 58861 Ps 526
Filed and Recorded Jun-11-2018 11:45am
2018-01 62196
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Prepared by:
Grantee's Name *3225 Cedar st LLC*
Grantee's Address *3225 Cedar St LLC*
*P.O. Box*
*Stone mountain GA 30086*

STATE OF GEORGIA
COUNTY OF FULTON

QUIT CLAIM DEED

This indenture is made this 7 day of June 2018, by and between GRANTOR (3225 CEDAR ST LLC") and GRANTEE (Big Bull Real Estate, LLC.").

KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, This quit claim deed is for the redemption rights which relates to a tax sale dated May 4th 2010 to Greyfield Resources Inc. and then quit claim to 3225 Cedar St LLC on March 29th 2012. Grantor does quitclaim unto Grantee all of his/her right, title and interest in and to the following described real property:

All that track or parcel of land lying and being in Land Lot 25, of the 14 District, Fulton County Georgia being part of Lots 32 and 33 of the subdivision of the property belonging to George M. Brown and Joseph M. Brown and as per plat by C. E. Roberts. Recorded in Plat Book 1, page 97, Fulton County Records, More Particularly Described as Follows:

Beginning at a point on the northeast side of McDonough road 213 feet, more or less, southeasterly from the northeast corner of McDonough road and Funston street (Formerly federal street) Which point is on the line between lots 32 and 33 as shown on said plat: Thence in a southerly direction along the northeast side of McDonough Road 54 feet to the southwest corner of lot 32, said plat: Thence inn a northeasterly direction 197 feet to the northwest corner of lot 32 and a 10 foot alley; Thence in a northwesterly direction along the southwestern side of said alley 52 feet to the northwest corner of said lot 33; Thence in a southwesterly direction 190 feet, more or less, to the northeast side of McDonough Road and the point of beginning, being side of McDonough Road and the point of the Beginning, Being Property known as 690 McDonough Road, S.E., Excepting however, from the above described property, that portion of same which was used in widening McDonough Road.

Being the same property described in deed dated November 29, 1985, Recorded in Deed Book 9927, Page 269, Fulton County, Georgia Records.

IN WITNESS WHEREOF, Grantor has affixed his/her hand and seal on the date first written.

Grantor Managing Member, Sharita Sawyer

Unofficial Witness

Sworn to and subscribed before me,
this 7 day of June, 2018

Notary Public

MARYANN ROJAS
Notary Public - State of Georgia
Gwinnett County
My Commission Expires May 13, 2022

050

After Recording please return to:
Stevens, Stevens & Oliver, LLC
4167 Roswell Road, Suite A
Atlanta, GA 30342
18-531

Deed Book 58861 Pg 527
Filed and Recorded Jun-11-2018 11:45am
2018-0162197
Real Estate Transfer Tax $3.70
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Please Cross-Reference:
Deed Book 49091, Page 654
Deed Book 51165, Page 24
FULTON COUNTY,GA RECORDS

## REDEMPTION QUITCLAIM DEED

STATE OF GEORGIA
COUNTY OF FULTON

THIS INDENTURE, made this ____ day of June, 2018 between 3225 CEDAR ST LLC party of the first part, and WARREN BETHEL, party of the second part,

WITNESSETH: That the said party of the first part for and in consideration of the Sum of ONE & NO/100 ($1.00) DOLLARS cash in hand paid, the receipt of which is hereby acknowledged, has bargained, sold and does by these presents bargain, sell, remise, release and forever quit-claim to the said party of the second part, themselves, their heirs and assigns, all the right, title, interest, claim or demand which the said party of the first part has or may have had in and to:

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

This deed is given pursuant to the provisions of O.C.G.A. 48-4-44, to evidence a redemption of the above described property from that certain tax deed dated May 4th, 2010 and recorded at Deed Book 49091, Page 654, Fulton County records. The right of redemption has not been foreclosed. The redemption amount was paid by Mills Holdings, LLC.

TO HAVE AND TO HOLD the said described premises unto the said party of the second part, themselves, their heirs and assigns, so that neither the said party of the first part nor itself, its successors, nor any other person claiming under it shall at any time, claim or demand any right, title or interest to the aforesaid described premises or its appurtenance.

IN WITNESS WHEREOF, the said party of the first part has hereunto set its hand and affixed its seal the day and year above written.

Signed, sealed and delivered in the presence of:

_____
Witness

3225 CEDAR ST LLC

By: _____
Name: SHAKITA SAWYER
Title: Managing Member

_____
Notary Public
My Commission Expires:

051

Deed Book 58861 Pg 528

## COPY CERTIFICATION

State of Georgia

County of Dekalb } ss.

On this the 7 day of June 2018, I certify that the attached
Day        Month        Year

or preceding document of 2 pages is a true, exact, complete and unaltered copy of

Quit QClaim Deed
Description of Original Document

☑ presented to me by

Shaede Sawyer
Original Document's Custodian on Above Date

and that, to the best of my knowledge, the original
document is neither a public record nor a publicly
recordable instrument, certified copies of which
are available from an official source other than a
Notary Public.

~ OR ~

☐ an official notarial record in my possession.

_____, Notary Public
Signature of Notary Public

MARYANN ROJAS
Notary Public - State of Georgia
Gwinnett County
My Commission Expires May 13, 2022

Place Notary Seal/Stamp Above

Maryann Rojas       May 13, 2022
Notary's Name Printed/Typed    Appointment
                               Expiration Date

----

**OPTIONAL**

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Further Description of Attached Document**

Address Where Original is Kept: _____

Original Document Date: _____ Copy Kept by Notary? ☐ Yes ☐ No

Signer(s) or Issuing Agency: _____

**Capacity Claimed by Custodian**
☐ Individual
☐ Corporate Officer — Title: _____
☐ University or School Officer — Title: _____
☐ Governmental Officer or Agent — Title: _____
☐ Business Proprietor or Manager
☐ Attorney
☐ Trustee
☐ Other: _____

Custodian is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #15922

M1306-04 (09/17)

052

EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND
LOT 119, OF THE 11TH DISTRICT, OF FULTON COUNTY, GEORGIA,
BEING LOT 2, OF THE SUBDIVISION OF W.M. WHIT ESTATE AS PER
PLAT BY E.W. ROBERTS, C.E., DATED AUGUST 6, 1930, RECORDED IN
PLAT BOOK 5, PAGE 54, FULTON COUNTY, GEORGIA RECORDS,

Deed Book 58861 Pg 527
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

053

# EXHIBIT H

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=71988...

```
Deed Book 58981 Pg  477
Filed and Recorded Jul-12-2018 10:43am
      2018-0192511
Real Estate Transfer Tax $95.00
CATHELENE ROBINSON
    Clerk of Superior Court
    Fulton County, Georgia
```

STATE OF GEORGIA                    After Recording, Return To: SSP Title &
COUNTY OF FULTON                                Escrow Solutions, LLC
                                                444 Highland Ave., NE,
                                                Ste. G101
                                                Atlanta, GA 30312

## WARRANTY DEED

THIS INDENTURE is made the 10th day of May, 2018, between NETWORK PROPERTIES & INVESTMENTS, LLC, a Georgia limited liability company, hereinafter referred to as the "Grantor," and BIG BULL REAL ESTATE, LLC, a Georgia limited liability company, hereinafter referred to as the "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

W I T N E S S E T H:

That, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, the Grantor does hereby grant, bargain, sell, remise, release, and forever convey to the Grantee, his heirs, successors and assigns, that certain real property more particularly described on Exhibit A attached hereto and incorporated herein by reference, being commonly known as 690 McDonough Blvd., Atlanta, GA 30315.

TO HAVE AND TO HOLD the said real property, with all and singular the rights, members, improvements and appurtenances to the said described premises in anywise appertaining or belonging, to the only proper use, benefit and behoof of the Grantee forever in fee simple.

AND THE GRANTOR will warrant and forever defend the right and title to the said described property unto the Grantee against the claims of Grantor and all others whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered in the presence of:      NETWORK PROPERTIES & INVESTMENTS, LLC
                                                       a Georgia Limited Liability Company

_____                             _____
Unofficial Witness                                    By: Richard Steele, Managing Member


_____
Notary Public            8/23/2020

        T Rachelle Russell
          NOTARY PUBLIC
      DeKalb County, GEORGIA

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=71988...

Deed Book 58981 Pg 478
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THAT TRACT or parcel of land lying and being in Land Lot 25 of the 14th District of Fulton County, Georgia, being part of Lots 32 and 33 of the subdivision of the property belonging to George M. Brown and Joseph M. Brown as per plat by C.E. Roberts, C.E. recorded in Plat Book 1, Page 97, Fulton County Records, more particularly described as follows:

BEGINNING at a point on the northeast side of McDonough Road 213 feet, more or less, southeasterly from the northeast corner of McDonough Road and Funston Street (formerly Federal Street) which point is on the line between Lots 32 and 33 as shown on said plat; thence in a southeasterly direction along the northeast side of McDonough Road 54 feet to the southwest corner of Lot 32, said plat; thence in a northeasterly direction 197 feet to the northeast corner of Lot 32 and a 10 foot alley; thence in a northwesterly direction along the southwestern side of said alley 52 feet to the northwest corner of said lot 33; thence in a southwesterly direction 190 feet, more or less, to the northeast side of McDonough Road and the point of beginning.

Subject Property Address:        690 McDonough Blvd SE, Atlanta, GA 30315

Parcel ID:                       14-0025-0001-037-3

# EXHIBIT I



**REAL ESTATE INVESTORS**

**NETWORK PROPERTIES & INVESTMENTS, LLC**
**4151 MEMORIAL DR SUITE A-210**
**678-506-8747 OFFICE LINE**
**404-228-8684 FAX LINE**

October 5th, 2020

Adam C Caskey
AC Law, PC
2275 Marietta BLVD Suite 270-367
Atlanta GA 30318

RE: Civil # 2020CV339366 690 McDonough Blvd

Dear Mr. Caskey,

It has come to my attention, that the deed that was recorded conveying ownership for this property to Network Properties & Investments, LLC dated February 1, 2018, from Teddy Jacobs was forged. Typically, our company specializes in acquiring properties that have gone through a tax sale and have tax deeds on them. We have a staff of employees that contact, locate and reach out to property owners to see if they are willing to sell their property or if they were not going to redeem the property taxes. We normally send letters to all parties with similar names to several addresses to the potential sellers. Approximately around February of 2018 we received a call from a letter that was mailed from what at the time we believed to be a Teddy Jacobs. It was explained to the person posing as Teddy Jacobs of the situation and he agreed to sell us the property for $1,500. It is normal practice for us to mail out a copy of the Tax deeds, Quit claim deed, security and cancellation as well as the petition for the excess funds. We received the Quit claim deed in the mail, and we mailed out a money order to what we believed to be Teddy Jacobs and that was that last we heard from him. I personally have never met Mr. Jacobs in person and all communication was done via mail or phone calls.

Normal protocols are to reach out to the tax deed owner via email and request a payoff statement to redeem the property taxes. It was discovered that 3225 Cedar St, LLC was no longer a valid corporation of Nevada because it was permanently revoked. Based on Nevada law, if a corporation is permanently revoked it cannot be reinstated. So, it was advised to either reinstate the corporation which obviously could not be done or to set up a new corporation prior to closing. The officer of 3225 Cedar St, LLC Anthony Johnson apparently started a new Corporation in GA. We normally advise all clients to reinstate their corporation prior to closing because that is what is required for the title insurer to issue a title policy.

We would like to handle this amicably and we are willing to clear the cloud on title with Network Properties & Investments, LLC Conveying ownership to, I buy Everything, LLC. Provided that any an all legal liabilities are distinguished. If you all agree to this, I will execute the Quit Claim deed and mail to your office. I have attached a draft copy of the quit claim deed for you to review. Please either call me or email me to acknowledge my proposal and that it has been agreed.

Sincerely,

Richard G Steele II
Network Properties & Investments LLC
Nwpropertiesatl@yahoo.com
404-849-5753

Deed Book 62083 Page 46
Cathelene Robinson
Clerk of Superior Court

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING PART OF LOTS 32 AND 33 OF THE SUBDIVISION OF THE PROPERTY BELONGING TO GEORGE M. BROWN AND JOSEPH M. BROWN AS PER PLAT BY C.E. ROBERTS RECORDED IN PLAT BOOK 1, PAGE 97, FULTON COUNTY RECORDS, MORE PARITCULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEAST SIDE OF MCDONOUGH ROAD (A/K/A MCDONOUGH BLVD) 213 FEET, MORE OR LESS, SOUTHEASTERLY FROM THE NORTHEAST CORNER OF MCDONOUGH ROAD A/K/A BLVD AND FUNSTON AVENUE WHICH POINT IS ON THE LINE BETWEEN LOTS 32 AND 33 AS SHOWN ON SAID PLAT; THENCE IN A SOUTHERLY DIRECTION ALONG THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD 54 FEET TO THE SOUTHWEST CORNER OF LOT 32, SAID PLAT; THENCE IN A NORTHEASTERLY DIRECTION 197 FEET TO THE NORTHWEST CORNER OF LOT 32 AND A 10 FOOT ALLEY; THENCE IN A NORTHWESTERLY DIRECTION ALONG THE SOUTHWESTERN SIDE OF SAID ALLEY 52 FEET TO THE NORTHWEST CORNER OF SAID LOT 33; THENCE IN A SOUTHWESTERLY DIRECTION 190 FEET, MORE OR LESS, TO THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD AND THE POINT OF BEGINNING. SAID PROPERTY IS KNOWN AS 690 MCDONOUGH ROAD, SE. A/K/A 690 MCDONOUGH BLVD, SE.

# EXHIBIT J



**NETWORK PROPERTIES & INVESTMENTS, LLC**
**4151 MEMORIAL DR SUITE A-210**
**678-506-8747 OFFICE LINE**
**404-228-8684 FAX LINE**

October 16th, 2020

Adam C Caskey
AC Law, PC
2275 Marietta BLVD Suite 270-367
Atlanta GA 30318

RE: Civil # 2020CV339366 690 McDonough Blvd

Dear Mr. Caskey,

As stated, I have agreed to release my interest in the above property in the letter, I sent you dated October 6, 2020. As stated, I am clearing the cloud on title from my company Network Properties & Investments, LLC. I have enclosed a fully executed Quit Claim deed, with this I hope to release my company from any legal liability.

Please either call me or email me to acknowledge you have received the Quit Claim deed. Also please feel free to call me if you have any questions.

Sincerely,

Richard G Steele II
Network Properties & Investments LLC
Nwpropertiesatl@yahoo.com
404-849-5753

Network Properties & Investmer
4151 Memorial Network Propert
& Investments Drive Suite 210-A
Decatur, Ga 30032

CERTIFIED MAIL

7017 3040 0000 6810 6834

ADan C CasKey
AC Law PC
2075 Marietta Blvd Suite 290-367
Atlanta GA 30318






1628

30318

U.S. POSTAGE PAID
FCM LETTER
PINE LAKE, GA
30072
OCT 16, 20
AMOUNT
$4.10
R2305K138694-07

Prepared by:
Grantee's Name
Grantee's Address

STATE OF GEORGIA
COUNTY OF FULTON

QUIT CLAIM DEED

This indenture is made this 16 day of Octo^ber 2020, by and between (NETWORK PROPERTIES & INVESTMENTS, LLC) "GRANTOR" and GRANTEE ("I BUY EVERYTHING LLC").

KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor does quitclaim unto Grantee all of his/her right, title and interest in and to the following described real property:

Legal Description
**SEE EXHIBIT A**

SUBJECT TO ANY RIGHT OF WAY DEED OR OTHER EASEMENTS OF RECORD
690  McDonough Blvd
Parcel ID 14-0025-0001-037-3

IN WITNESS WHEREOF, Grantor has affixed his/her hand and seal on the date first written.

_____
(Grantor Managing Member) Richard G Steele

_____
Unofficial Witness

Sworn to and subscribed before me,

this 16 day of October , 2020

_____
Notary Public

DANIELLE KEYSER
Gwinnett County
Notary Public
Expires
10-31-2023
STATE OF GEORGIA

Deed Book 62083 Page 46
Cathelene Robinson
Clerk of Superior Court

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING PART OF LOTS 32 AND 33 OF THE SUBDIVISION OF THE PROPERTY BELONGING TO GEORGE M. BROWN AND JOSEPH M. BROWN AS PER PLAT BY C.E. ROBERTS RECORDED IN PLAT BOOK 1, PAGE 97, FULTON COUNTY RECORDS, MORE PARITCULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEAST SIDE OF MCDONOUGH ROAD (A/K/A MCDONOUGH BLVD) 213 FEET, MORE OR LESS, SOUTHEASTERLY FROM THE NORTHEAST CORNER OF MCDONOUGH ROAD A/K/A BLVD AND FUNSTON AVENUE WHICH POINT IS ON THE LINE BETWEEN LOTS 32 AND 33 AS SHOWN ON SAID PLAT; THENCE IN A SOUTHERLY DIRECTION ALONG THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD 54 FEET TO THE SOUTHWEST CORNER OF LOT 32, SAID PLAT; THENCE IN A NORTHEASTERLY DIRECTION 197 FEET TO THE NORTHWEST CORNER OF LOT 32 AND A 10 FOOT ALLEY; THENCE IN A NORTHWESTERLY DIRECTION ALONG THE SOUTHWESTERN SIDE OF SAID ALLEY 52 FEET TO THE NORTHWEST CORNER OF SAID LOT 33; THENCE IN A SOUTHWESTERLY DIRECTION 190 FEET, MORE OR LESS, TO THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD AND THE POINT OF BEGINNING. SAID PROPERTY IS KNOWN AS 690 MCDONOUGH ROAD, SE. A/K/A   690 MCDONOUGH BLVD. SE.

# EXHIBIT K

# AC Law, PC

2275 Marietta Blvd
Suite 270-367
Atlanta, Georgia 30318

Phone (404) 781-2275
Fax (404) 949-3851

October 28, 2020

*Via Certified Mail, Return Receipt Requested*
*Article Number 7019 2970 0001 2547 4015*
Network Properties & Investments, LLC
c/o Richard Steele
4151 Memorial Dr. Ste. A-210
Decatur, GA 30032

      Re:   *I Buy Everything, LLC v. Network Properties & Investments, LLC, et al.*
             Fulton County Superior Court; CAFN: 2020CV339366
             Our File Reference: 690 McDonough Blvd

Dear Mr. Steele:

      Thank you for your letter of October 16, 2020.  I am returning the Quitclaim Deed you sent to us because a quitclaim deed from your company will not resolve all the matters at issue. My client's main goal is to establish clear title to the Property but, at this point, a deed from your company will not establish that goal.  My client remains open to amicable settlement discussions, but it must first reach a resolution with the other parties involved.

                          Yours very truly,

                          *Adam Caskey*

                          Adam Caskey

Encls.



UNITED STATES POSTAGE
PITNEY BOWES
02 1P     $ 006.900
0000852756   OCT 28 2020
MAILED FROM ZIP CODE 30335

CERTIFIED MAIL

7019 2970 0001 2547 4015

Network Properties & Investments, LLC
c/o Richard Steele
4151 Memorial Dr. Ste. A-210
Decatur, GA 30032

AC Law, PC
2275 Marietta Blvd
Ste. 270-367
Atlanta, GA 30318

# EXHIBIT L

Return Recorded Document to:
**Boomerang Finance, LLC**
**PO Box 20130**
**Mesa, AZ 85277**

---------------------------------- [Space Above This Line For Recording Data] ----------------------------------

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **May 9, 2018**, together with all Riders to this document.
(B)  "Borrower" is **Big Bull Real Estate, LLC**.  Borrower is the grantor under this Security Instrument.
(C)  "Lender" is **BOOMERANG FINANCE, LLC**. Lender is a **Delaware Limited Liability Company** organized and existing under the laws of Arizona.  Lender's address is **2152 S. Vineyard #105, Mesa, AZ 85210**.  Lender is the grantee under this Security Instrument.
(D)  "Note" means the promissory note signed by Borrower and dated **May 9, 2018**. The Note states that Borrower owes Lender **One Hundred Eighty-Two Thousand and 00/100** (U.S. **$182,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 7, 2018**.
(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(H)  "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(I) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

1

EXHIBIT I

(J) "Escrow Items" means those items that are described in Section 3.

(K) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(L) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(M) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(N) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(O) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of **FULTON**, State of Georgia.

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE THERETO**

which currently has the address of:        **690 McDonough Blvd. SE, Atlanta, GA 30315**

    TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges

2

and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts

3

evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by ender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other

4

hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender

may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall not occupy, establish, or use the Property as Borrower's principal residence during the term of this Security Instrument.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments

toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the

7

Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and

8

(c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

9

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable

10

Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale. Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms

11

designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, Sealed and delivered in the presence of:

_____
**Unofficial Witness**

_____
**Big Bull Real Estate, LLC**
By: Brock Burrows, Authorized Signor

_E. Rachelle Russell_
**Notary Public**

8/23/2020
**My notary expires**

T Rachelle Russell
NOTARY PUBLIC
DeKalb County, GEORGIA

_____ [Space Below This Line For Acknowledgement] _____

12

EXHIBIT "A"

Legal Description

ALL THAT TRACT or parcel of land lying and being in Land Lot 25 of the 14th District of Fulton County, Georgia, being part of Lots 32 and 33 of the subdivision of the property belonging to George M. Brown and Joseph M. Brown as per plat by C.E. Roberts, C.E. recorded in Plat Book 1, Page 97, Fulton County Records, more particularly described as follows:

BEGINNING at a point on the northeast side of McDonough Road 213 feet, more or less, southeasterly from the northeast corner of McDonough Road and Funston Street (formerly Federal Street) which point is on the line between Lots 32 and 33 as shown on said plat; thence in a southeasterly direction along the northeast side of McDonough Road 54 feet to the southwest corner of Lot 32, said plat; thence in a northeasterly direction 197 feet to the northeast corner of Lot 32 and a 10 foot alley; thence in a northwesterly direction along the southwestern side of said alley 52 feet to the northwest corner of said lot 33; thence in a southwesterly direction 190 feet, more or less, to the northeast side of McDonough Road and the point of beginning.

Subject Property Address:        690 McDonough Blvd SE, Atlanta, GA 30315

Parcel ID:                       14-0025-0001-037-3

13

# EXHIBIT M

Deed Book 51165 Pg     22
Filed and Recorded May-03-2012 08:38am
2012-0119315
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

STATE OF GEORGIA
COUNTY OF CARROLL

## QUIT CLAIM DEED

THIS INDENTURE made this 29th day of March, 2012, by and between
GREYFIELD RESOURCES, INC.,
party or parties of the first part, hereinafter referred to as "Grantor", and
3235 CEDAR ST LLC
party or parties of the second part hereinafter referred to as "Grantee", the words "Grantor" and
"Grantee" to include the neuter, masculine and feminine genders, the singular and the plural;

## WITNESSETH:

FOR AND IN CONSIDERATION of the sum of One Dollar and other good and valuable
consideration delivered to Grantor by Grantee at and before the execution, sealing and delivery
hereof, the receipt and sufficiency of which is hereby acknowledged, the Grantor has and hereby
does remise, release, convey and forever quit claim unto Grantee and the heirs, legal
representatives, successors and assigns of Grantee the following described property:

That tract or parcel of land conveyed by deed to CHRIS CRENSHAW Recorded at BOOK 31031, PAGE 1 per Records of Fulton
County, Georgia. Property known as 1033 MC DANIEL ST SW and Tax Parcel ID: 14-0087-0005-110-8 per records of the Fulton
County Tax Commissioner and plat maps of the Fulton County Tax Assessors office. Dist 14  Land lot 87

TO HAVE AND TO HOLD said tract or parcel of land in order that neither the Grantor
nor any person claiming under Grantor shall at any time, by any means or ways, have, claim or
demand any right or title to said land or any of the rights, members and appurtenances thereof.
IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year
first above written.

Signed, Sealed and Delivered in the presence of:

_____                          GREYFIELD RESOURCES, INC.
(Unofficial Witness)                              _____ (Seal)
                                                  Phillip Kashlmani President
_____
(Notary Public)

047

# EXHIBIT N

Weissman
5909 Peachtree Dunwoody Road
Suite 100
Atlanta, GA 30328

Record and Return to:
Weissman PC
One Alliance Center, 3500 Lenox Road, 4th Floor
Atlanta, GA 30326

File No.: IN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
Tax Parcel id 14-0087-0005-110-9

Deed Book 58878 Pg 576
Filed and Recorded Jun-11-2018 08:15am
2018-0168014
Real Estate Transfer Tax $59.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## WARRANTY DEED

STATE OF GEORGIA
COUNTY OF FULTON

THIS INDENTURE, made this June 7, 2018, between 3225 Cedar St, LLC of the County of Cobb, and the State of Georgia as party or parties of the first part, hereinafter called Grantor, and AG Home Solutions, LLC, a Georgia Limited Liability Company and BW Home Solutions, LLC, a Georgia Limited Liability Company, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, alienated, conveyed and confirmed and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property, to-wit:

SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE HERETO

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee, IN FEE SIMPLE together with every contingent remainder and right of reversion, and to the heirs and assigns of said Grantee.

AND THE SAID Grantor will warrant and forever defend the right and title to the above-described property unto the said Grantees against the claims of all persons whomsoever.

054

Deed (Warranty)

IN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

Deed Book 58878 Pg 577

IN WITNESS WHEREOF, the Grantor has signed and sealed this Deed, on the date and year above written.

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public

My Commission Expires: _____

3225 Cedar St, LLC

BY: _____
Shanta Sawyer
Managing Member

CORPORATE SEAL

TUNISIA JONES
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires Oct. 22, 2018

055

Deed (Warranty)

IN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

Deed Book 58878 P 578
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

All that tract or parcel of land lying and being in the City of Atlanta, being part of Land Lot 87 of the 14th District of Fulton County, Georgia, and being Lot 110, as shown on a plat of the property of Mrs. Leila A. Sisson's Estate, as shown by plat of R.H. Knapp, Real Estate Agent, dated May 17, 1883, as recorded in Plat Book 7, Pages 108 and 109, Fulton County Records and more particularly described as follows:

Commencing at a point 50 feet from the Southwest corner of McDaniel and Amy Streets and thence extending West 100 feet; thence South 50 feet; thence East 100 feet to McDaniel Street; thence North along the West side of McDaniel Street of the point of beginning.

Being the same property conveyed to 3225 Cedar St LLC by deed recorded at Deed Book 51165, Page 22, aforesaid records, said property also being known as 1033 McDaniel Street SW and Tax Parcel ID: 14-0087-0005-110-9.

056

Deed (Warranty)

IN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

# EXHIBIT O

Deed Book 59044 Pg 682
Filed and Recorded Jul-25-2018 08:13am
2018-0209238
Real Estate Transfer Tax $76.50
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Return recorded document to:
John J. Maurer, LLC
1827 Powers Ferry Rd, Bldg 5
Atlanta, Georgia 30339

## WARRANTY DEED

STATE OF GEORGIA
COUNTY OF DEKALB

THIS INDENTURE made the 20th day of July, 2018 by and between

BW Home Solutions, LLC and AG Home Solutions, LLC

as party or parties of the first part, hereinafter called Grantor, and

Mouna Abdelhamid

as party or parties of the second part, hereinafter called Grantee; the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits.

WITNESSETH THAT: Grantor, for and in consideration of the sum of one dollar ($1.00) and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, covey and confirm unto the said Grantee:

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend the right and title to the above-described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____ (seal)
BW Home Solutions, LLC By: Dafis Whitaker, Managing Member

_____ (seal)
AG Home Solutions, LLC By: Andrew Gregory, Managing Member

_____
(Unofficial Witness)

_____ (seal)
(Notary Public)

057

EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 87 of the 14th District
Fulton County, Georgia being more particularly described as follows:

Beginning at an iron point on the East right of way of McDaniel Street 225 feet
South from the Southeast corner of McDaniel Street and Gardner Street as
measured along the East right way of McDaniel Street; thence South along the
East right of way of McDaniel Street 25 feet; thence East 103 feet; thence North
25 feet; thence West 103 feet to McDaniel Street and the point of beginning.

Deed Book 59044 Pg 683
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

058

# EXHIBIT P

Fulton County Superior Court
***EFILED***LW
Date: 8/14/2020 1:55 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| I BUY EVERYTHING, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Civil Action File No. |
| | )    <u>2020CV339366</u> |
| NETWORK PROPERTIES & | ) |
| INVESTMENTS, LLC, BIG BULL REAL | ) |
| ESTATE, LLC, BOOMERANG | ) |
| FINANCE, LLC and 3225 CEDAR ST, | ) |
| LLC, a Nevada limited liability company | ) |
| and 3225 CEDAR ST, LLC,  a Georgia | ) |
| limited liability company, | ) |
| | ) |
| | ) |
| Respondents. | ) |

**PETITION FOR QUIET TITLE AND DECLARATORY JUDGMENT**

NOW COMES Petitioner I Buy Everything, LLC and states for its Petition for Quiet Title

and Declaratory Judgment as follows:

1.

Jurisdiction and venue are proper in this Court.

2.

Network Properties & Investments, LLC may be served by serving Richard Steele at

2783 Newtons Crest Circle, Snellville, Ga 30078.

3.

Big Bull Real Estate, LLC may be served by serving Blo Registered Agency at 32 W 200

South #307, Salt Lake City, Utah 84101.

4.

Boomerang Finance, LLC may be served by serving Incorp Services, Inc. at 919 North Market Street, Ste. 950, Wilmington, DE 19801.

5.

3225 Cedar St, LLC, a Nevada limited liability company, may be served by serving Incorp Services, Inc., at 3773 Howard Hughes Pkwy, Ste. 500S, Las Vegas, NV 89169.

6.

3225 Cedar St, LLC, a Georgia limited liability company, may be served by serving Sharita Sawyer, Registered Agent, at 6031 Blackhawk Trail, Mableton, Ga 30216.

7.

This action concerns real property known as 690 McDonough Blvd SE as more particularly described at Exhibit "A" (the "Property").

8.

Teddy Jacobs acquired the Property in 2006, as evidenced by the Warranty Deed attached as Exhibit "B".

9.

In 2010, the Property was sold at tax sale.  The tax deed was subsequently transferred to 3225 Cedar St, LLC, a Nevada limited liability company (the "True Cedar Street Entity"). Documents evidencing the tax deed interest are attached as Exhibit "C".

10.

Jacobs remained the owner of the Property subject to the 2010 tax deed interest held by Petitioner 3225 Cedar St, LLC until he recently conveyed the Property to the Petitioner as evidenced by the document attached as Exhibit "D".

11.

On or about February 1, 2018, Jacobs' signature was forged and later, on April 6, 2018, the document attached as Exhibit "E" was recorded in the Fulton County real estate records (hereinafter the "Forged Jacobs Deed").

12.

The Forged Deed purports to transfer title of the Property from Jacobs to Respondent Network Properties & Investments, LLC.

13.

Jacobs did not execute the Forged Deed and did not otherwise approve or authorize a transfer of title to the Property.  As such, the Forged Jacobs Deed is a nullity.  An Affidavit to such effect is attached as Exhibit "F".

14.

In a similar vein to the forgery inflicted upon Petitioner Jacobs, it appears there was also an unlawful attempt to appropriate the True Cedar Street Entity's rights.

15.

3225 Cedar Street is a Nevada limited liability company (the "True Cedar Street Entity") and the holder of a 2010 tax deed against the Property.

16.

On or about April 12, 2018, a domestic limited liability company known as 3225 Cedar Street, LLC (hereinafter the "False Cedar Street Entity") was formed with the Georgia Secretary of State.   A copy of the Secretary of State filing is attached as Exhibit "G".

17.

Soon thereafter on June 7, 2018, the False Cedar Street Entity executed a document purporting to release the True Cedar Street Entity's rights in the Property. A copy of this document is attached as Exhibit "H" and is hereinafter referred to as the "Forged Cedar Street Instrument".

18.

On or about May 10, 2018, Respondent Network Properties purported to convey the Property to Respondent Big Bull Real Estate, LLC.  Simultaneously, Big Bull purported to grant Respondent Boomerang Finance, LLC a security deed to the Property.  The immediately aforementioned instruments are attached as Exhibit "I" and are hereinafter referred to as the "Big Bull Instruments".

19.

Under Georgia law, a forged deed is a nullity and there are no bonafide purchaser protections.

20.

Respondent Network Properties never possessed title to the Property and therefore had no authority to convey ownership of the Property.

21.

Accordingly, Respondents Big Bull and Boomerang hold no legal rights to the Property.

22.

The Forged Jacobs Deed, Forged Cedar Street Instrument and the Big Bull Instruments are Adverse Claims that constitute clouds on the title to the Property. Petitioner cannot immediately or effectually maintain or protect the Property by any other course of proceeding other than by the filing of this action. Petitioner seeks by this action to cancel the Adverse Claims, as such operate to throw a cloud or suspicion upon the title to the Property and might be vexatiously or injuriously used.

23.

Contemporaneously with the filing of this petition, Petitioner has filed with the Clerk of Superior Court of Fulton County, Georgia a notice for record in the lis pendens docket.

24.

Petitioner is entitled to an order from this Court confirming that Petitioner Jacobs remains the record owner of the Property subject to the Tax Deed interest of the True Cedar Entity.

25.

Petitioner requests that this Court order the Clerk of the Superior Court of Fulton County to properly cancel of record the Forged Jacobs Deed, Forged Cedar Street Instrument and the Big Bull Instruments.

26.

There is an actual and present controversy between Petitioner and Respondents with respect to the Forged Jacobs Deed, Forged Cedar Street Instrument and the Big Bull Instruments. Petitioner has no adequate remedy at law and will suffer irreparable harm if the Court does not

intervene to declare the Forged Jacobs Deed, Forged Cedar Street Instrument and the Big Bull Instruments nullities.

WHEREFORE, having fully stated its claims, Petitioner requests that the Court:

i)      Confirm that Petitioner is the record owner of the Property subject to the tax deed interest of the True Cedar Entity;

ii)     Declare the Forged Jacobs Deed, Forged Cedar Street Instruments and Big Bull Instruments to be nullities;

iii)    Order the Clerk of Superior Court of Fulton County to properly cancel of record the Forged Jacobs Deed, Forged Cedar Street Instruments and Big Bull Instruments; and

iv)     That Petitioner have such other and further relief as is just and equitable.

Respectfully submitted this 14th day of August, 2020.

/s/ Adam C. Caskey
Adam C. Caskey
Georgia Bar No. 141410
AC Law, PC
2275 Marietta Blvd., Ste. 270-367
Atlanta, Ga 30318
acaskey@aclawpc.com
(404) 781-2278

# EXHIBIT Q

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

I BUY EVERYTHING, LLC,

        Petitioner,

v.

NETWORK PROPERTIES &
INVESTMENTS, LLC; BIG BULL REAL
ESTATE, LLC; BOOMERANG FINANCE,
LLC; 3225 CEDAR ST, LLC, a Nevada limited
liability company; and 3225 CEDAR ST, LLC,
a Georgia limited liability company,

        Respondents.

v.

3225 CEDAR ST, LLC, a Nevada limited
liability company,

        Petitioner in Cross-Claim,

v.

CEDAR ST, LLC, a Georgia limited liability
company, VAGABON GROUP HOLDINGS,
LLC, AG HOME SOLUTIONS, LLC, BW
HOME SOLUTIONS, LLC AND MOUNA
ABDELHAMID,

        Respondents in Cross-Claim.

CIVIL ACTION FILE
NO. 2020CV339366

690 McDonough Blvd

## ORDER ADDING PARTIES

This matter is before the Special Master on the motion of 3225 Cedar St, LLC, a Nevada

limited liability company (the "Nevada Entity"), to add Vagabon Group Holdings, LLC, AG

Home Solutions, LLC, BW Home Solutions, LLC and Mouna Abdelhamid as parties to this

proceeding.  After considering the Motion, the Special Master finds that the Motion should be is

hereby GRANTED.  The Nevada Entity is ORDERED to promptly commence efforts to serve such newly added parties with process by serving such Parties with: i) a copy of the original Petition filed by Petitioner; ii) a copy of the Nevada Entity's Answer and Cross-Claim; iii) a copy of this Order and; iv) a Summons.  Henceforward, the style of this case shall be as enumerated above.

SO ORDERED this 25th day of January, 2021.


*/s/ Ned Blumenthal*
Ned Blumenthal, Special Master

# EXHIBIT R

Fulton County Superior Court
***EFILED***MH
Date: 4/22/2021 5:21 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

I BUY EVERYTHING, LLC

    PETITIONER,

V.

NETWORK PROPERTIES &
INVESTMENTS, LLC, BOOMERANG
FINANCE, LCC; 3225 CEDAR STREET, LLC,
A GEORGIA LIMITED LIABILITY COMPANY,

    RESPONDENTS.

V.

3225 CEDAR STREET, LLC, A NEVADA
LIMITED LIABILITY COMPANY,

    PETITIONER IN CROSS-CLAIM,

V.

3225 CEDAR STREET, LLC, A GEORGIA
LIMITED LIABILITY COMPANY, VAGABON
GROUP HOLDINGS, LLC, BW HOME
SOLUTIONS, LLC, MOUNA ABDELHAMID
AND AG HOME SOLUTIONS, LLC,

    RESPONDENTS IN CROSS-CLAIM.

CIVIL ACTION FILE: NO. 2020CV339366

---

**ANSWER, AFFIRMATIVE DEFENSES, AND CROSS-CLAIM OF RESPONDENT AG HOME
SOLUTIONS, LLC**

---

    COMES NOW, Respondent AG Home Solutions, LLC ("Respondent"), by and through the undersigned counsel, and hereby files its *Answer, Affirmative Defenses, and Cross-Claim* in response to the *Answer and Cross-Claims of 3225 Cedar St, LLC, a Nevada Limited Liability Company* (the "Cross-Claim") filed by 3225 Cedar St, LLC ("Petitioner") on January 19, 2021, respectfully showing this Honorable Court as follows:

1

## AFFIRMATIVE DEFENSES

Respondent sets forth the following affirmative defenses based on the information contained in the Cross-Claim. Respondent does not assume the burden of proof with respect to any such defense; however, unless otherwise required by applicable law.

## FIRST AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because the Cross-Claim fails to state a claim upon which relief can be granted pursuant to O.C.G.A. § 9-11-12(b)(6).

## SECOND AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because any injuries or damages allegedly sustained by Petitioner are a direct and proximate cause of its failure to exercise a duty of ordinary care.

## THIRD AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because any injuries or damages allegedly sustained by Petitioner are a direct and proximate cause of its own negligence.

## FOURTH AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because any injuries or damages allegedly sustained by Petitioner are a direct and proximate cause of another person or entity for whose negligence the Respondent is not vicariously liable or responsible.

## FIFTH AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because Respondent is not the actual or proximate cause of Plaintiff's damages, if any.

## SIXTH AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed under the doctrines of

waiver, estoppel, and laches due to the failure to act by its predecessor in interest.

## SEVENTH AFFIRMATIVE DEFENSE

Petitioner's Cross-Claim against Respondent should be dismissed because it has unclean hands.

## EIGHT AFFIRMATIVE DEFENSE

As discovery has not yet begun, Respondent specifically reserves the right to raise any additional claims or affirmative defenses which may be discovered. Respondent hereby incorporates by reference all affirmative defense set forth in O.C.G.A. §§ 9-11-8(c) and 9-11-12(b) to the extent applicable. Defenses asserted herein are based upon the initial theories of defense counsel.  Respondent further specifically reserves the right to withdraw or add any defenses to conform to the evidence presented at the time of trial. Additionally, Respondent specifically reserves the right to strike any allegation in the Cross-Claim which is not supported by the evidence and which would be immaterial. The final determination of defenses will be made by the evidence presented at the time of trial and by the charges given by the Court for jury consideration.

## NINTH AFFIRMATIVE DEFENSE

Respondent reserve the right to assert any and all additional defenses that arise during the course of this litigation and reserves the right to amend this Answer to assert such defenses.

## ANSWER

Each of the averments set forth in the Cross-Claim is denied unless specifically admitted herein. To the extent that the averments set forth in the Cross-Claim raise an inference that Petitioner is entitled to any relief requested against Respondent, such inference is denied. Respondent answers the specific averments set forth within the Cross-Claim as follows:

1.

Respondent admits the allegations of Paragraph 1 of Petitioner's Cross-Claim for venue and jurisdictional purposes only. To the extent that the averments set forth in this paragraph raise an inference that Petitioner is entitled to any relief requested against Respondent, such inference is denied.

2.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 2 of the Cross-Claim, and therefore denies the same.

2.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 2 of the Cross-Claim, and therefore denies the same.[1]

3.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 3 of the Cross-Claim, and therefore denies the same.

4.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 4 of the Cross-Claim and therefore denies the same.

5.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 5 of the Cross-Claim, and therefore denies the same.

6.

Respondent is without sufficient information or belief to admit or deny the allegations of

---

[1] Petitioner's Cross-Claims includes two paragraphs enumerated No. 2. As such, Respondent response to them as listed in Petitioner's Cross-Claim.

4

Paragraph 6 of the Cross-Claim, and therefore denies the same.

7.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 7 of the Cross-Claim, and therefore denies the same.

8.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 8 of the Cross-Claim, and therefore denies the same.

9.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 9 of the Cross-Claim, and therefore denies the same.

10.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 10 of the Cross-Claim, and therefore denies the same.

11.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 11 of the Cross-Claim, and therefore denies the same.

12.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 12 of the Cross-Claim, and therefore denies the same.

13.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 13 of the Cross-Claim, and therefore denies the same.

14.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 14 of the Cross-Claim, and therefore denies the same.

15.

Respondent is without sufficient information or belief to admit or deny the allegations of Paragraph 15 of the Cross-Claim, and therefore denies the same.

Respondent denies that Petitioner is entitled to any of the relief for which they request and pray for in the unnumbered paragraph following Paragraph No. 15 of the Cross-Claim and further denies that Petitioner can satisfy the conditions precedent for any such damages, recovery, or relief sought against Respondent under any applicable Georgia statute or law.

WHEREFORE, Respondent prays as follows upon Petitioner's Cross-Claim:

(a) Petitioner takes nothing by its Cross-Claim, and Petitioner's Cross-Claim be dismissed with prejudice;

(b) This Court awards Respondent its costs of litigation, including, but not limited to reasonable attorneys' fees; and,

(c) This Court grants Respondent such other and further relief as is just and proper.

## CROSS-CLAIM OF AG HOMES SOLUTIONS, LLC AGAINST 3225 CEDAR STREET, LLC, A GEORGIA LIMITED LIABILITY COMPANY AND SHARITA SAWYER, IN HER INDIVIDUAL CAPACITY

COMES NOW, AG Homes Solutions, LLC ("AG Homes") and brings this, its Cross-Claim against 3225 Cedar Street, LLC, a Georgia limited liability company, and Sharita Sawyer, in her individual capacity, respectfully showing this Honorable Court as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1.

Jurisdiction and venue are proper in this Court.

2.

AG Home is a Georgia limited liability company formed with the Georgia Secretary of State in 2017 and is currently in good standing with the Georgia Secretary of State.

3.

3225 Cedar St, LLC is a Georgia limited liability company formed with the Georgia Secretary of State in 2018 and is currently in good standing with the Georgia Secretary of State.

4.

Sharita Sawyer is the organizer and managing member of 3225 Cedar St, LLC.

<u>**STATEMENT OF FACTS**</u>

5.

On March 29, 2012, Greyfield Resources, Inc. conveyed that certain real property located at 1033 McDaniel Street SW ("1033 McDaniel") to 3225 Cedar St, LLC, a Nevada limited liability company, via that certain Quitclaim Deed filed and recorded on May 3, 2012, at Deed Book 51165, Page 22, Fulton County Records.

6.

On April 30, 2018, Sharita Sawyer caused 3225 Cedar St, LLC, a Georgia limited liability company, to be formed with the Georgia Secretary of State. Sharita Sawyer is listed as the organizer under 3225 Cedar St, LLC's Articles of Organization. True and correct copies of the formation documents are attached hereto as **Exhibit "A."**

7.

7.

On June 7, 2018, 3225 Cedar St, LLC, a Georgia limited liability company, ("3225 Cedar")
conveyed that certain real property located at 1033 McDaniel Street SW ("1033 McDaniel") to
AG Home and BW Home Solutions, LLC ("BW Home") via that certain *Warranty Deed* filed and
recorded on June 11, 2018, at Deed Book 58878, Page 576, Fulton County Records (the "Warranty
Deed"). A true and correct copy of the Warranty Deed is attached hereto as **Exhibit "B."**

8.

Sharita Sawyer signed the Warranty Deed on behalf of 3225 Cedar as its managing member.

9.

Petitioner 3225 Cedar Street, LLC, a Nevada limited liability company, purports that as
part of a fraudulent scheme to appropriate the 3225 Cedar St, LLC, a Nevada limited liability
company's rights in multiple properties in Fulton County, Georgia, Sharita Sawyer formed 3225
Cedar St, a Georgia limited liability company in 2018.

10.

Petitioner 3225 Cedar Street, LLC, a Nevada limited liability company, purports that
Sharita Sawyer fraudulently transferred ownership of 1033 McDaniel to AG Homes and BW
Home.

11.

Sharita Sawyer is a necessary party to this proceeding and therefore, simultaneously with
the filing of this Cross-Claim, Respondent is moving for an Order directing that Sharita Sawyer
be added as a party to this proceeding.

12.

3225 Cedar and Sharita Sawyer warranted to AG Home that 3225 Cedar was the rightful

owner of the full, fee simple title to 1033 McDaniel and that it had full authority to convey clear title of such property to AG Home and BW Home by virtue of the Warranty Deed.

13.

After the execution of the Warranty Deed, AG Home and BW Home believed they held fee simple title to 1033 McDaniel.

14.

Relying upon the warranties provided by 3225 Cedar and Sharita Sawyer pursuant to the Warranty Deed, AG Home and BW Home conveyed their interest in 1033 McDaniel to Mouna Abdelhamid via that certain Warranty Deed, dated July 20, 2018, filed and recorded on July 25, 2018, at Deed Book 59044, Page 682, Fulton County Records. A true and correct copy of the Warranty Deed is attached hereto as **Exhibit "C."**

15.

The validity of AG Home's title to 1033 McDaniel has been called into question by the Answer and Cross-Claim of 3225 Cedar St, LLC, a Nevada limited liability company, and the filing of this lawsuit.

## BREACH OF WARRANTY OF TITLE

16.

The Warranty Deed provides that 3225 Cedar, as Grantor, "will warrant and forever defend the right and title to the above-described property unto the said Grantees against the claims of all persons whomsoever."

17.

3225 Cedar has breached the warranty of title to 1033 McDaniel by transferring title to property that it does not own to AG Home.

18.

Under the warranty of title provisions of the Warranty Deed, 3225 Cedar is obligated to defend the title of AG Home as to 1033 McDaniel, including costs of AG Home to defend this action.

19.

AG Home is entitled to damages in an amount to be determined at trial for 3225 Cedar's breach of warranty of title as to 1033 McDaniel.

### FRAUD AND FRAUD IN THE INDUCEMENT

20.

3225 Cedar and Sharita Sawyer misrepresented the ownership interest held by 3225 Cedar as to 1033 McDaniel.

21.

3225 Cedar and Sharita Sawyer gave false information to AG Home that they could convey full, fee simple interest in 1033 McDaniel.

22.

3225 Cedar and Sharita Sawyer knew that their representations to AG Home were false and misleading.

23.

3225 Cedar and Sharita Sawyer made representations to AG Home with scienter and with the intent to deceive AG Home.

24.

AG Home has suffered and will continue to suffer damages proximately caused by the misrepresentations by 3225 Cedar and Sharita Sawyer.

## DISREGARD OF CORPORATE ENTITY

### 25.

Sharita Sawyer created 3225 Cedar with the purpose and intent to use 3225 Cedar to fraudulently appropriate the 3225 Cedar St, LLC, a Nevada limited liability company's rights in 1033 McDaniel Street.

### 26.

Sharita Sawyer's disregard of the corporate entity rendered 3225 Cedar a mere instrumentality for the transaction of Sharita Sawyer's own personal affairs and dealings.

### 27.

There is such unity of interest and ownership that separate personalities of 3225 Cedar as a limited liability company and Sharita Sawyer as the organizer and managing member therefor no longer exist.

### 28.

To adhere to the doctrine of corporate entity would promote injustice or protect fraud.

### 29.

As 3225 Cedar is the alter ego of Sharita Sawyer, Sharita Sawyer is individually liable along with 3225 Cedar for damages suffered by AG Home.

## ATTORNEY'S FEES AND EXPENSES OF LITIGATION

### 30.

3225 Cedar and Sharita Sawyer's conduct amounts to bad faith under O.C.G.A. § 13-6-11.

### 31.

Pursuant to O.C.G.A. § 13-6-11, 3225 Cedar and Sharita Sawyer's bad faith entitles Respondent to reasonable attorneys' fees and expenses of litigation.

32.

WHEREFORE, AG Home prays:

(a) That this Court award damages, costs and expenses of litigation, including
reasonable attorneys' fees and expenses of litigation, pursuant to O.C.G.A. § 13-6-11; and,

(b) That this Court award such other and further relief as this Court deems just and
equitable to Respondents.

The 22nd day of April, 2021.

**WILLIAMS TEUSINK, LLC**

*/s/ Eric M. Teusink*
Eric M. Teusink
Georgia Bar No. 781156
Gala Villahoz
Georgia Bar No. 814556

The High House
309 Sycamore Street
Decatur, Georgia 30030
Office: 404.373.9590
Facsimile: 404.378.6049
etusink@williamsteusink.com
gvillahoz@williamsteusink.com

*Counsel for Respondent AG Home Solutions, LLC*

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| I BUY EVERYTHING, LLC | |
| PETITIONER, | |
| V. | CIVIL ACTION FILE: NO. 2020CV339366 |
| NETWORK PROPERTIES & INVESTMENTS, LLC, BOOMERANG FINANCE, LCC; 3225 CEDAR STREET, LLC, A GEORGIA LIMITED LIABILITY COMPANY, | |
| RESPONDENTS. | |
| V. | |
| 3225 CEDAR STREET, LLC, A NEVADA LIMITED LIABILITY COMPANY, | |
| PETITIONER IN CROSS-CLAIM, | |
| V. | |
| 3225 CEDAR STREET, LLC, A GEORGIA LIMITED LIABILITY COMPANY, VAGABON GROUP HOLDINGS, LLC, BW HOME SOLUTIONS, LLC, MOUNA ABDELHAMID AND AG HOME SOLUTIONS LLC, | |
| RESPONDENTS IN CROSS-CLAIM. | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel of record in the foregoing matter with a copy of the foregoing pleading via the Court's Odyssey Electronic Filing System as follows:

| | | |
|---|---|---|
| Vagabon Group Holdings, LLC | Network Properties & | BW Home Solutions, LLC |
| c/o Phillip Stephen | Investments, LLC | c/o U.S. Corporation Agents |
| 541 10th Street, Suite 164 | 2783 Newtons Crest Circle | 1420 Southlake Plaza Drive |
| Atlanta, Georgia 30318 | Snellville, Georgia 30078 | Morrow, Georgia 30260 |

13

Adam C. Caskey
AC Law, PC
2275 Marietta Blvd
Suite 270-367
Atlanta, Georgia 30318
*Counsel for I Buy Everything, LLC*

3225 Cedar St, LLC, a Georgia limited liability company
c/o Sharita Sawyer
6031 Blackhawk Trail
Mableton, Georgia 30216

Shannon W. Sams. Esq.
W. Shannon Sams Law, P. C.
4355 Cobb Parkway
Ste. J-505
Atlanta, Georgia 30339
*Counsel for 3225 Cedar St, LLC, a Nevada limited liability company*

Kelsey J. Grodzicki, Esq.
Winter Capriola Zenner, LLC
One Ameris Center
3490 Piedmont Road NE,
Ste 800
Atlanta, Georgia 30305
*Counsel for Boomerang Finance, LLC*

Big Bull Real Estate, LLC
32 W 200 South #307
Salt Lake City, Utah 84101

Mouna Abdelhamid
570 Saint Regis Lane
Alpharetta, Georgia 30022

Barry L. Zimmerman
6376 Spalding Drive
Norcross, Georgia 30092

This 22nd day of April, 2021.

**WILLIAMS TEUSINK, LLC**

*/s/ Eric M. Teusink*
Eric M. Teusink
Georgia Bar No. 781156
Gala Villahoz
Georgia Bar No. 814556

The High House
309 Sycamore Street
Decatur, Georgia 30030
Office: 404.373.9590
Facsimile: 404.378.6049
etusink@williamsteusink.com
gvillahoz@williamsteusink.com

*Counsel for Respondent AG Home Solutions, LLC*

14

# Exhibit "A"

Control Number : 18051758

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF ORGANIZATION

I, **Brian P. Kemp**, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**3225 CEDAR ST LLC**
a **Domestic Limited Liability Company**

has been duly organized under the laws of the State of Georgia on **04/12/2018** by the filing of articles of organization in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **04/30/2018**.



Brian P. Kemp
Secretary of State

**ARTICLES OF ORGANIZATION**

*Electronically Filed*
Secretary of State
Filing Date: 4/12/2018 5:17:16 PM

| BUSINESS INFORMATION | |
| --- | --- |
| CONTROL NUMBER | 18051758 |
| BUSINESS NAME | 3225 CEDAR ST LLC |
| BUSINESS TYPE | Domestic Limited Liability Company |
| EFFECTIVE DATE | 04/12/2018 |

| PRINCIPAL OFFICE ADDRESS | |
| --- | --- |
| ADDRESS | PO BOX 311, STONE MOUNTAIN, GA, 30086, USA |

| REGISTERED AGENT'S NAME AND ADDRESS | |
| --- | --- |
| NAME | ADDRESS |
| SHARITA SAWYER | 6031 BLACKHAWK TRAIL, Cobb, MABLETON, GA, 30126, USA |

| ORGANIZER(S) | | |
| --- | --- | --- |
| NAME | TITLE | ADDRESS |
| ANTHONY JOHNSON | ORGANIZER | 11304 SOLSTICE LOOP, SANFORD, FL, 32771, USA |
| SHARITA SAWYER | ORGANIZER | 6031 BLACKHAWK TRAIL, MABLETON, GA, 30126, USA |

| OPTIONAL PROVISIONS |
| --- |
| N/A |

| AUTHORIZER INFORMATION | |
| --- | --- |
| AUTHORIZER SIGNATURE | SHARITA SAWYER |
| AUTHORIZER TITLE | Organizer |

# Exhibit "B"

**Weissman**
5909 Peachtree Dunwoody Road
**Suite 100**
**Atlanta, GA 30328**

Deed Book 58878 Pg  576
Filed and Recorded Jun-11-2018 08:15am
**2018-0168014**
Real Estate Transfer Tax $59.00
**CATHELENE  ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

**Record and Return to:**
Weissman PC
One Alliance Center, 3500 Lenox Road, 4th Floor
Atlanta, GA  30326

**File No.:  IN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**
**Tax Parcel id 14-0087-0005-110-9**

# WARRANTY DEED

**STATE OF GEORGIA**
**COUNTY OF FULTON**

THIS INDENTURE, made this June 7, 2018, between **3225 Cedar St, LLC** of the County of Cobb, and the State of Georgia as party or parties of the first part, hereinafter called Grantor, and **AG Home Solutions, LLC, a Georgia Limited Liability Company and BW Home Solutions, LLC, a Georgia  Limited Liability Company**, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, alienated, conveyed and confirmed and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property, to-wit:

**SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE HERETO**

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee, IN FEE SIMPLE together with every contingent remainder and right of reversion, and to the heirs and assigns of said Grantee.

AND THE SAID Grantor will warrant and forever defend the right and title to the above-described property unto the said Grantees against the claims of all persons whomsoever.

Deed (Warranty)

IN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

Deed Book 58878 Pg 577

IN WITNESS WHEREOF, the Grantor has signed and sealed this Deed, on the date and year above written.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires:

3225 Cedar St, LLC

BY: _____
      Shanta Sawyer
      Managing Member

CORPORATE SEAL

TUNISIA JONES
NOTARY PUBLIC
Fulton County
State of Georgia
My Comm. Expires Oct. 22, 2019

Deed (Warranty)                                                                                    IN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

. . . .

Deed Book 58878 Pg   578
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

# EXHIBIT "A"

All that tract or parcel of land lying and being in the City of Atlanta, being part of Land Lot 87 of the 14th District of Fulton County, Georgia, and being Lot 110, as shown on a plat of the property of Mrs. Leila A. Sisson' s Estate, as shown by plat of R.H. Knapp, Real Estate Agent, dated May 17, 1883, as recorded in Plat Book 7, Pages 108 and 109, Fulton County Records and more particularly described as follows:

Commencing at a point 50 feet from the Southwest corner of McDaniel and Amy Streets and thence extending West 100 feet; thence South 50 feet; thence East 100 feet to McDaniel Street; thence North along the West side of McDaniel Street of the point of beginning.

Being the same property conveyed to 3225 Cedar St LLC by deed recorded at Deed Book 51165, Page 22, aforesaid records, said property also being known as 1033 McDaniel Street SW and Tax Parcel ID: 14-0087-0005-110-9.

Deed (Warranty)                                                                    IN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

# Exhibit "C"

Deed Book 59044 Pg 682
Filed and Recorded Jul-25-2018 08:13am
2018-0209238
Real Estate Transfer Tax $76.50
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

Return recorded document to:
John J. Maurer, LLC
1827 Powers Ferry Rd, Bldg 5
Atlanta, Georgia 30339

<u>WARRANTY DEED</u>

STATE OF GEORGIA
COUNTY OF DEKALB

THIS INDENTURE made the 20th day of July, 2018 by and between

BW Home Solutions, LLC and AG Home Solutions, LLC

as party or parties of the first part, hereinafter called Grantor, and

Mouna Abdelhamid

as party or parties of the second part, hereinafter called Grantee; the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits.

WITNESSETH THAT: Grantor, for and in consideration of the sum of one dollar ($1.00) and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, covey and confirm unto the said Grantee:

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend the right and title to the above-described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____ (seal)
BW Home Solutions, LLC By: Brafin Whitaker, Managing Member

_____ (seal)
AG Home Solutions, LLC By: Andrew Gregory, Managing Member

_____ (seal)

(Unofficial Witness)

(Notary Public)

JOHN J. MAURER
MY COMMISSION EXPIRES
NOTARY PUBLIC
MAY 14, 2019
COBB COUNTY, GEORGIA

EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 87 of the 14th District
Fulton County, Georgia being more particularly described as follows:

Beginning at an iron point on the East right of way of McDaniel Street 225 feet
South from the Southeast corner of McDaniel Street and Gardner Street as
measured along the East right way of McDaniel Street; thence South along the
East right of way of McDaniel Street 25 feet; thence East 103 feet; thence North
25 feet; thence West 103 feet to McDaniel Street and the point of beginning.

Deed Book 59044 Pg 683
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

# EXHIBIT S

Fulton County Superior Court
***EFILED***MH
Date: 9/16/2021 3:50 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| I BUY EVERYTHING, LLC. | |
| Petitioner, | |
| v. | CIVIL ACTION FILE |
| NETWORK PROPERTIES & INVESTMENTS, LLC; BIG BULL REAL ESTATE, LLC; BOOMERANG FINANCE, LLC; 3225 CEDAR ST, LLC, a Nevada limited liability company; and 3225 CEDAR ST, LLC, a Georgia limited liability company, | NO.: 2020CV339366 |
| Respondents, | |
| v. | |
| 3225 CEDAR ST, LLC, a Nevada limited liability company, | |
| Petitioner in Cross-Claim. | |
| v. | |
| CEDAR ST, LLC, a Georgia limited liability company, VAGABON GROUP HOLDINGS, LLC, AG HOME SOLUTIONS LLC, BW HOME SOLUTIONS, LLC AND MOUNA ABDELHAMID, | |
| Respondents in Cross-Claim. | |

## <u>DEFENDANT MOUNA ABDELHAMID'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO CROSS-CLAIM OF 3225 CEDAR ST, LLC , AND CROSS-CLAIM AGAINST AG HOME SOLUTIONS, LLC AND BW HOME SOLUTIONS, LLC</u>

Defendant Mouna Abdelhamid (the "Defendant and/or Abdelhamid") hereby responds and files her *Answer and Affirmative Defenses* to Cross-Claim Plaintiff 3225 Cedar St, LLC's ("Plaintiff and/or 3225 Cedar") Cross-Claim as follows:

**FIRST DEFENSE**

Plaintiff's Cross-Claim ("Cross-Claim") fails to state a claim for which relief can be granted against the Defendant. The Cross-Claim should, therefore, be dismissed.

**SECOND DEFENSE**

Plaintiff's claims are barred by equitable doctrines of waiver, estoppel and laches.

**THIRD DEFENSE**

Any injuries or damages allegedly sustained by the Plaintiff was directly and proximately caused by their failure to exercise ordinary care for their own safety.

**FOURTH DEFENSE**

Any injuries or damages allegedly sustained by the Plaintiff was directly and proximately caused by its own negligence or by some other person or entity for whose negligence the Defendant is not vicariously liable or responsible.

**FIFTH DEFENSE**

Any injuries or damages allegedly sustained by the Plaintiffs were directly and proximately caused by their voluntary assumption of a known risk.

**SIXTH DEFENSE**

Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel and laches due to the failure to act by its predecessor in interest.

By way of further defense and responding specifically to each allegation of Plaintiff's Cross-Claim, Defendant states as follows:

1.

Defendant admits the allegations of Paragraph 1 of the Cross-Claim.

2.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 2 of the Cross-Claim, and therefore denies the same.

3.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 3 of the Cross-Claim, and therefore denies the same.

4.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 4 of the Cross-Claim, and therefore denies the same.

5.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 5 of the Cross-Claim, and therefore denies the same.

6.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 6 of the Cross-Claim, and therefore denies the same.

7.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 7 of the Cross-Claim, and therefore denies the same.

8.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 8 of the Cross-Claim, and therefore denies the same.

9.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 9 of the Cross-Claim, and therefore denies the same.

10.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 10 of the Cross-Claim, and therefore denies the same.

11.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 11 of the Cross-Claim, and therefore denies the same.

12.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 12 of the Cross-Claim, and therefore denies the same.

13.

Defendant denies the allegations of Paragraph 13 of the Cross-Claim.

14.

Defendant denies the allegations of Paragraph 14 of the Cross-Claim.

15.

Defendant is without sufficient information to admit or deny the allegations of Paragraph 15 of the Cross-Claim, and therefore denies the same.

WHEREFORE, Abdelhamid prays for the following relief:

A. That Plaintiff's Cross-Claim against Mouna Abdelhamid be dismissed and discharged without any liability to Abdelhamid;

B. That this Court enter an order declaring that Abdelhamid is a bona fide purchaser for value who purchased the Property in good faith without notice of any defect in title;

C. That the prayers of the 3225 Cedar's Cross-Claim be denied;

D. That 3225 Cedar's Cross-Claim be dismissed for failure to state a claim;

E. That 3225 Cedar's Cross-Claim be dismissed with prejudice;

F.  That this Court award damages, costs and expenses of litigation, including reasonable attorneys' fees and expenses of litigation, pursuant to O.C.G.A. § 13-6-11; and

G.  That this Court grant such other and further relief as it deems just and proper.

## MOUNA ABDELHAMID'S CROSS-CLAIM AGAINST AG HOME SOLUTIONS, LLC AND BW HOME SOLUTIONS, LLC

MOUNA ABDELHAMID ("Abdelhamid") files this Cross-Claim against AG HOME SOLUTIONS, LLC ("AG Home") and BW HOME SOLUTIONS, LLC ("BW Home") respectfully showing the Court as follows:

### PARTIES JURISDICTION AND VENUE

1.  Jurisdiction and venue of this Cross-Claim are proper in this Court.

2.  Abdelhamid is an individual, residing in Fulton County Georgia, with an interest in the Property that is subject to this action.

3.  AG Home is a Georgia limited liability company, and is currently in good standing with the Georgia Secretary of State.

4.  BW Home is a Georgia limited liability company, and is currently in good standing with the Georgia Secretary of State.

### FACTS

5.  This case concerns the property located at 1033 McDaniel St. SW, Atlanta, Georgia 30310 (the "Property").

6.  On June 7, 2018, AG Home and BW Home took title to the Property from 3225 Cedar St, LLC ("3225 Cedar") via a Warranty Deed, recorded on June 11, 2018, in Deed Book 58878, Page 576, in Fulton County, Georgia records.

7.      On July 20, 2018, AG Home and BW Home, conveyed the Property to Abdelhamid via a
General Warranty Deed, recorded on July 25, 2018, in Deed Book 59044, Page 682, in
Fulton County, Georgia records.

8.      At all times relevant hereto, Abdelhamid holds fee simple title to the Property as of July
20, 2018. Abdelhamid therefore has a legal and equitable interest in the Property by virtue
of her ownership of same, and such interest constitutes a legally protectable interest.

9.      3225 Cedar has now brought a Cross-Claim alleging that transfer of the Property to AG
Home and BW Home and the subsequent transfer to Abdelhamid are fraudulent.

<u>**COUNT I**</u>
<u>**BREACH OF WARRANTY**</u>

10.     Abdelhamid adopts and incorporates herein by reference all preceding paragraphs of her
Cross-Claim as though fully set forth herein.

11.     By executing and delivering the General Warranty Deed to Abdelhamid, AG Home and
BW Home covenanted that they would warrant and defend Abdelhamid's title to the
Property against all claims.

12.     AG Home and BW Home failed to warrant and defend Abdelhamid's title against 3225
Cedar, and therefore AG Home and BW Home breached their covenant to Abdelhamid.

13.     Abdehamid paid $109,000.00 to AG Home and BW Home for the Property.

14.     AG Home and BW Home represented to Abdelhamid that it would "convey good and
marketable, fee simple title to [the Property] to [Abdelhamid]", in the Purchase and Sale
Agreement for the Property.

15.     In the Purchase and Sale Agreement, AG Home and BW Home affirmed that all
representations in the agreement were true and correct.

16.  As part of the closing for the transfer of the Property to Abdelhamid, AG Home and BW Home executed an Owner's Affidavit.

17.  In the Owner's Affidavit, AG Home and BW Home, swore that they were the fee simple owners of the Property.

18.  In the Owner's Affidavit, AG Home and BW Home, swore that they were unaware of any adverse claims or other matters affecting the title to the Property.

19.  In the Owner's Affidavit, AG Home and BW Home, swore that "there are no parties in possession of the property, using the property, or having a right or claim to use or possess the property, or any part thereof, other than the Owner . . . ."

20.  Abdelhamid did not have any notice of 3225 Cedar's claim in the Property.

21.  Abdelhamid is a bona fide purchaser who purchased the Property in good faith without notice of any defect in title and for a valuable consideration.

22.  Abdelhamid has no adequate remedy at law.

   WHEREFORE, Defendant Abdelhamid prays for the following relief:

   A.   That this Court enter an order awarding damages for AG Home and BW Home's breach of warranty of title;

   B.   That this Court award damages, pursuant to O.C.G.A. § 13-6-11; and

   C.   That this Court grant such other and further relief as it deems just and proper.

## COUNT II
## COSTS AND ATTORNEY'S FEES PURSUANT TO O.C.G.A. §13-6-11

23.  Abdelhamid adopts and incorporates herein by reference all preceding paragraphs of her Cross-Claim as though fully set forth herein.

24.  As evidenced by the foregoing, AG Home and BW Home have acted in bad faith.

25.     AG Home and BW Home have caused Abdelhamid to spend unnecessary time, trouble and expense by bringing Abdelhamid into this matter.

26.     AG Home's and BW Home's conduct is the direct cause of Abdelhamid incurring attorney's fees and other expenses to defend herself.

27.     Consequently, Abdelhamid is entitled to recover her attorney's fees and expenses of litigation in an amount to shown pursuant to O.C.G.A. §13-6-11.

WHEREFORE, Defendant Abdelhamid prays this Court for a Judgment, Order and Decree as follows:

A.      That judgment be entered against AG Home and BW Home in an amount sufficient to compensate Abdelhamid for all costs and expenses of litigation, including without limitation attorney's fees, pursuant to O.C.G.A. §13-6-11; and

B.      Awarding Abdelhamid such other and further relief this Court deems just and proper under the premises.

Respectfully submitted this September 16, 2021.

WINTER CAPRIOLA ZENNER, LLC

/s/ Kelsey Grodzicki
Kelsey Grodzicki
Georgia Bar No. 134259

*Attorney for Mouna Abdelhamid*

One Ameris Center
3490 Piedmont Road, NE, Suite 800
Atlanta, GA 30305
(404) 844-5700 (phone)
(404) 844-5701 (fax)
kgrodzicki@wczlaw.com

/s/ J. Nathan Blau
**J. NATHAN BLAU**
Georgia Bar No. 062950

*Attorney for Mouna Abdelhamid*
(with express permission by Kelsey
Grodzicki)

**THE NATHAN LAW FIRM OF**
**J. NATHAN BLAU, LLC.**
3070 Presidential Drive, Suite 226
Atlanta, Georgia 30340
(678) 395-7337 (phone)
Nblau@thenathanlawfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the foregoing matter has been served upon the parties by statutory electronic service pursuant to O.C.G.A. § 9-11-5.

This 16th day of September 2021.

WINTER CAPRIOLA ZENNER, LLC

/s/ Kelsey Grodzicki
Kelsey Grodzicki
Georgia Bar No. 134259

*Attorney for Mouna Abdelhamid*

One Ameris Center
3490 Piedmont Road, NE, Suite 800
Atlanta, GA 30305
(404) 844-5700 (phone)
(404) 844-5701 (fax)
kgrodzicki@wczlaw.com

# EXHIBIT T

Fulton County Superior Court
***EFILED***AC
Date: 3/18/2022 8:53 AM
Cathelene Robinson, Clerk

Note to Clerk of Court of Fulton County
Please Cross Reference to:
Warranty Deed at Deed Book 58878, Page 576
Warranty Deed at Deed Book 58977, Page 4

After Recording, Please Return to:
Kelsey Grodzicki, Esq.
Winter Capriola Zenner, LLC
3490 Piedmont Road, NW, Suite 800
Atlanta, GA 30305

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| I BUY EVERYTHING, LLC, )<br><br>  Petitioner, )<br><br>v. )<br><br>NETWORK PROPERTIES & )<br>INVESTMENTS, LLC; BIG BULL REAL )<br>ESTATE, LLC; BOOMERANG FINANCE, )<br>LLC; 3225 CEDAR ST, LLC, a Nevada Limited )<br>Liability Company; and 3225 CEDAR ST, LLC, )<br>a Georgia Limited Liability Company, )<br><br>  Respondents, )<br><br>v. )<br><br>3225 CEDAR ST, LLC, a Nevada Limited )<br>Liability Company, )<br><br>  Petitioner in Cross-Claim, )<br><br>v. )<br><br>3225 CEDAR ST, LLC,  A Georgia Limited )<br>Liability Company, VAGABON GROUP )<br>HOLDINGS, LLC, AG HOME SOLUTIONS, )<br>LLC, BW HOME SOLUTIONS, LLC, AND )<br>MOUNA ABDELHAMID, )<br><br>  Respondents in Cross-Claim. ) | CIVIL ACTION FILE<br>NO. 2020CV339366 |

### FINAL ORDER AND DECREE

This matter is before the Court on the consent of 3225 Cedar St, LLC, a Nevada limited

liability company (the "Nevada Entity"), Mouna Abdelhamid ("Abdelhamid") and AG Home

Solutions, LLC ("AG").  The remaining Parties have either previously: a) fallen irretrievably in default or; b) received an adjudication of their claims.

The Nevada Entity, Abdelhamid and AG have reached an amicable settlement agreement, the terms of which have previously been consummated.  As a result, Abdelhamid is hereby declared to be the owner of the real property more particularly described at Exhibit "A", free and clear of any claim or right of the Nevada Entity. Abdelhamid's cross-claims against AG are hereby dismissed with prejudice.

This is the Final Order in this case and the Clerk is directed to mark the case as CLOSED. This Final Order resolves and disposes of all claims in this action. The Clerk is instructed to record a certified copy of this Final Order in the real estate records of Fulton County and to cross-reference it with the instruments appearing at the top of the first page of this instrument.

SO ORDERED this _18_ day of _March_, 2022.

_____
Chief Judge Christopher Brasher
Superior Court of Fulton County


*Presented by:*

*/s/Barry L. Zimmerman*
Special Master Barry L. Zimmerman


*(Attorney Signatures on Following Page)*

*Consented to by:*

*/s/ Adam C. Caskey*
Adam C. Caskey
Georgia Bar No. 141410
AC Law, PC
2275 Marietta Blvd, Ste., Ste. 270-367
(404) 781-2278
acaskey@aclawpc.com
*Attorney for Petitioner*


*/s/Kelsey Grodzicki*
Kelsey Grodzicki
Georgia Bar No. 134259
One Ameris Center
3490 Piedmont Road, NE, Ste. 800
Atlanta, Ga 30305
(404) 844-5700
kgrodzicki@wcalaw.com
*Attorney for Abdelhamid*


*/s/Monika V. Scott*
Monika V. Scott
Fidelity National Law Group
4170 Ashford Dunwoody Road, Ste. 475
Atlanta, Ga 30319
(770) 325-4835
Monika.Scott@fnf.com
*Attorney for AG Home Solutions, LLC*

## EXHIBIT "A"

All that tract or parcel of land lying and being in the City of Atlanta, being part of Land Lot 87 of the 14th District of Fulton County, Georgia, and being Lot 110, as shown on a plat of the property of Mrs. Leila A. Sisson's Estate, as shown by plat of R.H. Knapp, Real Estate Agent, dated May 17, 1883, as recorded in Plat Book 7, Pages 108 and 109, Fulton County Records and more particularly described as follows:

Commencing at a point 50 feet from the Southwest corner of McDaniel and Amy Streets and thence extending West 100 feet; thence South 50 feet; thence East 100 feet to McDaniel Street; thence North along the West side of McDaniel Street of the point of beginning.

Being the same property conveyed to 3225 Cedar St LLC by deed recorded at Deed Book 51165, Page 22, aforesaid records, said property also being known as 1033 McDaniel Street SW and Tax Parcel ID: 14-0087-0005-110-9.

# EXHIBIT U

Fulton County Superior Court
***EFILED***AC
Date: 4/5/2021 9:06 AM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| I BUY EVERYTHING, LLC, | |
| Petitioner, | CIVIL ACTION FILE |
| | NO. 2020CV339366 |
| v. | |
| NETWORK PROPERTIES & INVESTMENTS, LLC; BIG BULL REAL ESTATE, LLC; BOOMERANG FINANCE, LLC; 3225 CEDAR ST, LLC, a Nevada limited liability company; and 3225 CEDAR ST, LLC, a Georgia limited liability company, | |
| Respondents. | |
| v. | |
| 3225 CEDAR ST, LLC, a Nevada limited liability company, | |
| Petitioner in Cross-Claim, | |
| v. | |
| 3225 CEDAR ST, LLC, a Georgia limited liability company, VAGABON GROUP HOLDINGS, LLC, AG HOME SOLUTIONS, LLC, BW HOME SOLUTIONS, LLC AND MOUNA ABDELHAMID, | |
| Respondents in Cross-Claim. | |

**FINAL ORDER AND DECREE AS TO**
**REAL PROPERTY KNOWN AS 690 MCDONOUGH BLVD SE ONLY**

The Court has received the Interim Special Master Report pertaining to one of the three (3) properties at issue in this litigation and known as 690 McDonough Blvd and more particularly described as Exhibit "A" (the "McDonough Property").

The Court hereby adopts such Interim Special Master Report in its totality. As a result, the Court hereby declares Petitioner I Buy Everything, LLC ("Petitioner") to be vested with fee simple

title to the McDonough Property, free and clear of any and all rights of Network Properties &

Investments, LLC, Big Bull Real Estate, LLC and Boomerang Finance, LLC, including the

following instruments:

> Quitclaim Deed in favor of Network Properties & Investments, LLC, recorded in Fulton County Deed Book 58611, Page 609.

> Warranty Deed in favor of Big Bull Real Estate, LLC, recorded in Fulton County Deed Book 58981, Page 477.

> Deed to Secure Debt in favor of Boomerang Finance, LLC, recorded in Fulton County Deed Book 58981, Page 479.

In addition, the Court finds that the certain instrument executed by 3225 Cedar St, LLC, a

*Georgia* limited liability company (the "Georgia Entity"), recorded at Fulton County Deed Book

58861, Page 526 is a legal nullity and does not operate to impact the McDonough Property.

Accordingly, that certain tax deed recorded at Fulton County Deed Book 49091, Page 644 and

assigned to 3225 Cedar St, LLC, a *Nevada* limited liability company (the "Nevada Entity"), at

Fulton County Deed Book 51165, Page 21 is deemed to be in full force and effect, subject only to

the right of Petitioner to redeem the McDonough Property from such instrument by payment of

the statutory redemption amount, unless and until such right of redemption is divested by the

Nevada Entity's compliance with O.C.G.A. § 48-4-45.

The Court, seeing no just reason for delay, hereby enters final judgment in favor of

Petitioner and against Respondents Network Properties, LLC, 3225 Cedar St, LLC, a *Georgia*

limited liability company, Big Bull Real Estate, LLC and Boomerang Finance, LLC, and this Order

shall operate as a Final Order as to such parties as contemplated by O.C.G.A § 9-11-54(b).

In addition, this Order shall operate as final judgment in favor of 3225 Cedar St, LLC, a

*Nevada* limited liability company reestablishing the aforementioned tax deed and shall have the

same binding effect contemplated by O.C.G.A. § 9-11-54 as to the Parties pertaining to the McDonough Property.

The Clerk is directed to record this *Final Order and Decree as to Real Property Known as 690 McDonough Blvd SE* and make marginal cross-references to each of the instruments referenced herein upon Petitioner's payment of statutory recording fees.  In addition, the Special Master is directed to hold further proceedings on the remaining two (2) properties at issue in this litigation without delay.  The Clerk shall not mark this file as closed due to the fact that a determination of the rights of the Nevada Entity and Respondents in Cross-Claim as to the properties known as 1151 Tucker Place and 1033 McDaniel Street must still be adjudicated.

SO ORDERED this 5 day of ____April____, 2021.

_____
Chief Judge Christopher Brasher
Superior Court of Fulton County

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 25 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING PART OF LOTS 32 AND 33 OF THE SUBDIVISION OF THE PROPERTY BELONGING TO GEORGE M. BROWN AND JOSEPH M. BROWN AS PER PLAT BY C.E. ROBERTS RECORDED IN PLAT BOOK 1, PAGE 97, FULTON COUNTY RECORDS, MORE PARITCULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEAST SIDE OF MCDONOUGH ROAD (A/K/A MCDONOUGH BLVD) 213 FEET, MORE OR LESS, SOUTHEASTERLY FROM THE NORTHEAST CORNER OF MCDONOUGH ROAD A/K/A BLVD AND FUNSTON AVENUE WHICH POINT IS ON THE LINE BETWEEN LOTS 32 AND 33 AS SHOWN ON SAID PLAT; THENCE IN A SOUTHERLY DIRECTION ALONG THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD 54 FEET TO THE SOUTHWEST CORNER OF LOT 32, SAID PLAT; THENCE IN A NORTHEASTERLY DIRECTION 197 FEET TO THE NORTHWEST CORNER OF LOT 32 AND A 10 FOOT ALLEY; THENCE IN A NORTHWESTERLY DIRECTION ALONG THE SOUTHWESTERN SIDE OF SAID ALLEY 52 FEET TO THE NORTHWEST CORNER OF SAID LOT 33; THENCE IN A SOUTHWESTERLY DIRECTION 190 FEET, MORE OR LESS, TO THE NORTHEAST SIDE OF MCDONOUGH ROAD A/K/A BLVD AND THE POINT OF BEGINNING.  SAID PROPERTY IS KNOWN AS 690 MCDONOUGH ROAD, SE. A/K/A 690 MCDONOUGH BLVD, SE.

# EXHIBIT V

1533



WFG National Title Insurance Company
a Williston Financial Group company

SCHEDULE A
ALTA LOAN POLICY

Name and Address of Title Insurance Company: WFG National Title Insurance Company, 12909 SW
68th Pkwy., Suite 350, Portland, OR 97223

File No.:    2018-26
Loan No.:                                              Policy No.: 3155500-03698078
Address Reference:  690 McDonough Blvd., Atlanta GA 30315
Amount of Insurance: $182,000.00
Date of Policy:   July 12, 2018 at 10:43 AM                 Premium: $520.00

1.   Name of Insured:
     Boomerang Finance

2.   The estate or interest in the Land that is encumbered by the Insured Security Deed is:
     Fee Simple

3.   Title is vested in:
     Big Bull Real Estate, LLC

4.   The Insured Security Deed and its assignments, if any, are described as follows:
     Security Deed from Big Bull Real Estate, LLC to Boomerang Finance dated May 10, 2018 in the
     original principal amount of $182,000.00 recorded in the Fulton County Registry of Deeds on July 12,
     2018 at 10:43 AM, in Book 58981, Page 479.

5.   The Land referred to in this policy is described as follows:  SEE ATTACHED EXHIBIT "A"

6.   This policy incorporates by reference those ALTA endorsements selected below:


                              By: SSP Title & Escrow Solutions, LLC

                              _____
                                        Authorized Signatory


ALTA Loan Policy (06/17/06)
WFG National Form No. 3155500-GA



### WFG National Title Insurance Company
a Williston Financial Group company

SCHEDULE B
EXCEPTIONS FROM COVERAGE

File No.  2018-26

Policy No.  3155500-03698078

PART I

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:



SCHEDULE B

File No.  2018-26

Policy No. 3155500-03698078

PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Security Deed:



WFG National Title Insurance Company
a Williston Financial Group company

EXHIBIT A

File No.  2018-26

Policy No. 3155500-03698078

LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 25 of the 14th District of Fulton County, Georgia, being part of Lots 32 and 33 of the subdivision of the property belonging to George M. Brown and Joseph M. Brown as per plat by C.E. Roberts, C.E. recorded in Plat Book 1, Page 97, Fulton County Records, more particularly described as follows:

BEGINNING at a point on the northeast side of McDonough Road 213 feet, more or less, southeasterly from the northeast corner of McDonough Road and Funston Street (formerly Federal Street) which point is on the line between Lots 32 and 33 as shown on said plat; thence in a southeasterly direction along the northeast side of McDonough Road 54 feet to the southwest corner of Lot 32, said plat; thence in a northeasterly direction 197 feet to the northeast corner of Lot 32 and a 10 foot alley; thence in a northwesterly direction along the southwestern side of said alley 52 feet to the northwest corner of said lot 33; thence in a southwesterly direction 190 feet, more or less, to the northeast side of McDonough Road and the point of beginning.

# EXHIBIT W



OWNER'S POLICY OF TITLE INSURANCE
Issued By
WFG NATIONAL TITLE INSURANCE COMPANY

POLICY NUMBER: 3155400-03571951. FILE NUMBER: 18-155

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, WFG NATIONAL TITLE INSURANCE COMPANY, a South Carolina corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.

2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii) failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed acknowledged, notarized, or delivered;

        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3   Unmarketable Title

In Witness Whereof, WFG NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

WFG NATIONAL TITLE INSURANCE COMPANY

By:
President

ATTEST:
Secretary

ALTA Owner's Policy 06-17-2006
WFG Form No 3155400

Page 1 of 7

4.  No right of access to and from the Land.

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (a)  the occupancy, use, or enjoyment of the Land;

   (b)  the character, dimensions, or location of any improvement erected on the Land;

   (c)  the subdivision of land; or

   (d)  environmental protection

   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9.  Title being vested other than as stated in Schedule A or being defective

   (a)  as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

   (b)  because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

      (i)  to be timely, or

      (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.

   (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i)  the occupancy, use, or enjoyment of the Land;

      (ii)  the character, dimensions, or location of any improvement erected on the Land;

      (iii)  the subdivision of land; or

      (iv)  environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

ALTA Owner's Policy 06-17-2006
WFG Form No 3155400                                    Page 2 of 7

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

(i) the term "Insured" also includes

(A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(C) successors to an Insured by its conversion to another kind of Entity;

(D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured, (2) if the grantee wholly owns the named Insured, (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

(ii) with regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets,

roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of

loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the

Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a

reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies. If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover

until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the

ALTA Owner's Policy 06-17-2006
WFG Form No 3155400

Page 6 of 7

policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at 12909 SW 68th Parkway, Suite 350, Portland, OR 97223. WFG National Title Insurance Company's telephone number is (800) 334-8885. Email address: claims@wfgnationaltitle.com



WFG National Title Insurance Company
a Williston Financial Group company

SCHEDULE A
ALTA OWNER'S FORM

Name and Address of Title Insurance Company: WFG National Title Insurance Company, 340
Oswego Pointe Drive, Suite 100, Lake Oswego, OR 97034

File No : **18-155**                                    Policy No : **3155400-03571951**
Loan No.:
Address Reference: **1033 McDaniel Street, SW, Atlanta, GA 30310**
Amount of Insurance: $ **$109,000.00**              Premium: **$459.00**

Date of Policy:   **06/22/2018**        at       **1:00 PM**

1. Name of Insured:  **Mouna Abdelhamid**

2 The estate or interest in the Land that is encumbered by the Insured Mortgage is:  **FEE
SIMPLE**

3. Title is vested in:  **Mouna Abdelhamid**

4. The Insured Mortgage and its assignments, if any, are described as follows:

N/A

5. The Land referred to in this policy is described as follows:

All that tract or parcel of land lying and being in Land Lot 87 of the 14th District, Fulton County,
Georgia, being Lot 110, as depicted on the survey of Property of Mrs. Leile L. Sisson Estate, as
per plat recorded in Plat Book 7, Pages 108-109, Fulton County, Georgia Records, which plat is
incorporated herein by reference and made a part of this description. Said property being known
as 1033 McDaniel Street SW according to the present system of numbering property in Fulton
County Georgia.

By:  John J. Maurer, Ll C

Authorized Signatory

ALTA Owner's Policy Schedule A (06/17/06)
WFG National Form No. 3155400-A



**WFG** National Title Insurance Company
a WillistonFinancial Group company

SCHEDULE B
EXCEPTIONS FROM COVERAGE

File No   **18-155**                    Policy No.   **3155400-03571951**

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

1. This policy does not insure as to the exact amount of acreage contained within subject property.
2. Taxes for the year 2018 and subsequent years, not yet due and payable and any additional taxes, interest and/or penalties which may be assess for prior tax years by virtue of adjustment, re-appraisal, re-assessment, reversal of exemption, appeal or other amendment to the tax records of the city or county in which the subject property is located.
3. Rights or claims of parties in possession.
4. Mechanics', Contractors' or Materialmens' liens and lien claims, if any, where no notice thereof appears of record.
5. Unpaid water bills, sewer, sanitation bills and any and all other sums outstanding and owed to a government or government authority for which there is no recorded execution or lien.
6. Easements or claims of easements not shown by the public records.
7. Covenants, conditions, restriction, easements and/or servitudes, if any, appearing in the public records.
8. Any mortgage, deed of trust, security deed, judgment, lien or encumbrance of any kind which has been created by the Insured, imposed upon or assented to by the insured or of which the insured has actual knowledge.
9. Any fact which would be disclosed by a comprehensive and accurate survey of the property. Covered Risk 2(c) is hereby removed.

ALTA Owner's Policy Schedule A (06/17/06)
WFG National Form No. 3155400-A